Merrimack
No. 2004-378

DONALD G. HUGHES *& a.*

v.

NEW HAMPSHIRE DIVISION OF AERONAUTICS *& a.*

Argued: December 9, 2004
Opinion Issued: March 22, 2005

*Nelson, Kinder, Mosseau & Saturley, P.C.*, of Manchester (*William C. Saturley* and *Catherine M. Costanzo* on the brief, and *Mr. Saturley* orally), for the plaintiffs.

*Kelly A. Ayotte*, attorney general (*Daniel J. Mullen*, associate attorney general, on the brief and orally), for the defendants.

DALIANIS, J. The plaintiffs, Donald G. Hughes and Robert W. Hughes, appeal the order of the Superior Court (*McGuire*, J.) granting the defendants' motion for summary judgment. The plaintiffs sued the New Hampshire Department of Transportation, Division of Aeronautics (the State), Mark P. Hodgdon, individually and in his capacity as senior

assistant attorney general, and Kathryn M. Bradley, individually and in her capacity as assistant attorney general, for their involvement in the plaintiffs' efforts to purchase land in Wolfeboro. We affirm in part, reverse in part and remand.

The plaintiffs allege the following facts. On February 17, 1999, they entered into a purchase and sale agreement with KS Realty (transaction one) to purchase land, on part of which was located the Wolfeboro/Lakes Region Airport, for $2 million. The purchase and sale agreement was set to expire on March 30, 1999, but was extended to March 31, 1999.

In early March, the plaintiffs became aware of RSA 422:46, which grants the State a right of first refusal in the sale of any airport. RSA 422:46 (2002). The plaintiffs notified the director of aeronautics and requested that the State either exercise or waive its right of first refusal. The State did neither before the purchase and sale agreement expired on March 31, 1999. The State admits that as of March 1, 1999, it had only $1,116,740.50 available to exercise its right of first refusal.

The plaintiffs then entered into a second agreement with KS Realty (transaction two). By the terms of this agreement the plaintiffs loaned $900,000 to Donald Satterfield, the principal of KS Realty; he executed a promissory note and gave a mortgage on the property to the plaintiffs to secure the loan. The agreement required the plaintiffs to operate the airport. It also required them to obtain approval to subdivide the land necessary to the airport from the rest of the property and obtain an appraisal. Two sales contracts were then to be executed: one for the airport parcel and one for the remaining parcel. The State sought the details of the second agreement. The plaintiffs assured the State that it was not a purchase and sale agreement, and that if a purchase and sale agreement were signed, they would notify the State; the plaintiffs did not provide the defendants with a copy of the second agreement at this time. The plaintiffs applied for subdivision of the property.

On July 27, 1999, the State filed suit against the plaintiffs and KS Realty in the Carroll County Superior Court, seeking to enjoin the subdivision of the property, and seeking a declaration that it had ninety additional days to evaluate and exercise its right of first refusal with respect to transaction one. The plaintiffs provided the defendants with a copy of the second agreement in August 1999. Transaction two expired on October 31, 1999. The plaintiffs do not allege any continuing interest in the property; it is still owned by KS Realty.

On December 23, 1999, Hodgdon sent a letter to counsel for KS Realty detailing a plan to purchase the entire parcel, contingent upon the State

obtaining financing. The plan included the provision that KS Realty would "convey the entire property to the State or an entity of the State's designation ...." At a meeting held on February 24, 2000, Bradley conceded that if the State were successful in its suit in Carroll County, a group of private investors would reimburse the State for its initial investment in the land. This group would then give the portion of the property necessary to run the airport to the State, and develop the remaining lakefront portions. The Carroll County Superior Court (*Fauver*, J.) issued an order on June 22, 2000, denying the State the right to exercise its right of first refusal on transaction one.

The plaintiffs then brought suit against the defendants seeking: (1) a declaration that RSA 422:46 is unconstitutional on its face and as applied; (2) an injunction preventing the State from using or threatening to use RSA 422:46 in connection with the potential sale of the airport property; (3) damages for tortious interference with contractual relations; and (4) damages for violation of 42 U.S.C. § 1983 (2000). The trial court dismissed the state law claims against Hodgdon and Bradley individually, as it found they were at all times acting as agents, employees or officials of the State. The plaintiffs do not appeal the dismissal of Hodgdon and Bradley as defendants on these claims. The trial court then granted the defendants' motion for summary judgment on all claims, effectively denying the petition for injunctive relief. The plaintiffs do not appeal the denial of their request for injunctive relief.

On appeal the plaintiffs argue that the trial court erred in granting the defendants' summary judgment motion because RSA 422:46 is unconstitutional both on its face, and as applied; and because there are genuine issues of material fact: (1) concerning whether the individual defendants were acting within the scope of their authority; (2) concerning whether the individual defendants are entitled to immunity for the tortious interference with contractual relations and 42 U.S.C. § 1983 claims; (3) concerning whether the State is entitled to immunity for the tortious interference with contractual relations and 42 U.S.C. § 1983 claims; and (4) sufficient to bring the tortious interference with contractual relations and 42 U.S.C. § 1983 claims to a jury. Finally the plaintiffs argue that the defendants' motion was procedurally flawed.

We will analyze these issues in turn and as necessary. We will begin by addressing the plaintiffs' claim that RSA 422:46 is unconstitutional on its face and as applied. The constitutionality of a statute involves a question of law, which we review *de novo*. *Webster v. Town of Candia*, 146 N.H. 430, 434 (2001).

We will then analyze the claims under 42 U.S.C. § 1983 and the state law tortious interference with contractual relations claims, which require separate analyses of the defendants' possible immunity. If we find the defendants are not immune from suit, or if there is a genuine issue of material fact as to their immunity, we will analyze the substance of the claim. Where we find immunity on a claim, we will not analyze its substance.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. We review the trial court's application of the law to the facts *de novo. Big League Entm't v. Brox Indus.*, 149 N.H. 480, 482 (2003).

*I. Facial Constitutional Challenge to RSA 422:46*

The plaintiffs argue that RSA 422:46 is unconstitutional on its face. First, they argue that RSA 422:46 permits an unconstitutional taking because it allows the State to purchase an airport at the price agreed upon by the parties, which is not necessarily the "just compensation" required by the State and Federal Constitutions. *See* U.S. CONST. amend. V; N.H. CONST. pt. I, art. 12; *Burrows v. City of Keene*, 121 N.H. 590, 596 (1981). Second, they argue that RSA 422:46 constitutes a direct taking because it grants the State a right of first refusal in airport purchases without requiring the State to pay for this right.

We decide cases on constitutional grounds only when necessary. *Appeal of Wintle*, 146 N.H. 664, 666 (2001). In this case, we need not decide the facial challenges to the statute because the plaintiffs lack standing to assert them. Although no party disputes the plaintiffs' standing, a party's standing to bring suit is a question of subject matter jurisdiction, which may be addressed at any time. *See Asmussen v. Comm'r, N.H. Dep't of Safety*, 145 N.H. 578, 588 (2000); *Route 12 Books & Video v. Town of Troy*, 149 N.H. 569, 575 (2003).

The plaintiffs lack standing because they cannot raise the constitutional claims of another. *Silver Brothers, Inc. v. Wallin*, 122 N.H. 1138, 1140 (1982). The general rule in New Hampshire is that a party has standing to raise a constitutional issue only when the party's own rights have been or will be directly affected. *Petition of Burling*, 139 N.H. 266,

272 (1994). Both of the plaintiffs' theories assert the rights of the property owner, for the plaintiffs have no constitutionally protected rights in the property at issue.

"For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken . . . ." *Cienega Gardens v. United States*, 331 F.3d 1319, 1328 (Fed. Cir. 2003). Property, in the constitutional sense, is not the physical thing itself, but a group of rights which the owner of the thing has with respect to it. *Burrows*, 121 N.H. at 597. The term refers to a person's right to possess, use, enjoy and dispose of a thing and is not limited to the thing itself. *Id.* The just compensation principle applies if these rights are abridged by a government regulation. *Id.*

█ The right to just compensation, for any part of a property taken, belongs to the owner of the property. *See* U.S. CONST. amends. V, XIV, § 1; N.H. CONST. pt. I, art. 12; *Burrows*, 121 N.H. at 596. Only the owner of the property interest may bring a constitutional challenge to a statute that allegedly deprives the owner of those rights without just compensation. *Cienega Gardens*, 331 F.3d at 1328; *see, e.g., Greenfield Country Est. Tenants v. Deep*, 666 N.E.2d 988, 991 (Mass. 1996).

█ The right of first refusal conferred by RSA 422:46 arguably affected the plaintiffs, but that does not give them standing to challenge RSA 422:46. Indeed, the only case cited by the plaintiffs to support their contention that a statutorily created right of first refusal is unconstitutional relies upon the principle that the right to grant first refusal belongs to the *owner* of the property. *See Manufactured Housing Communities v. State*, 13 P.3d 183, 192, 193 (Wash. 2000); *see also Greenfield Country Est.*, 666 N.E.2d at 992 (noting that a right of first refusal limits an *owner's* freedom to transfer property). We hold that, since the plaintiffs have no ownership interest in the property at issue, they lack standing to bring a facial constitutional challenge to RSA 422:46.

## II. Constitutional Challenge to RSA 422:46 as Applied

The plaintiffs next argue that RSA 422:46 is unconstitutional as applied, in that it deprived them of their contract rights without just compensation. The plaintiffs base this claim upon the State's failure either to act upon or waive its right of first refusal concerning transaction one. The plaintiffs assert that the defendants acted to appropriate their purchase and sale contract without providing any compensation to them.

The plaintiffs correctly assert that contract rights can constitute property. The hallmark of property is an individual entitlement grounded in state law, which cannot be removed except "for cause." *Riblet Tramway Co. v. Stickney*, 129 N.H. 140, 147 (1987). However, the purchase and sale agreement did not give the plaintiffs the type of entitlement that rises to the level of property.

■ Purchase and sale agreements are executory contracts. 17 C. SZYPSZAK, NEW HAMPSHIRE PRACTICE, REAL ESTATE § 3.02[B], at 46 (2003). As such, these agreements "contain conditions that buyers set to their obligation to pay the purchase price in exchange for the real estate." *Id.* One condition commonly imposed in purchase and sale agreements, *see id.* § 3.02[B][1], at 48, and imposed by the parties here, is that the seller possess clear title to the property. A right of first refusal has been found to affect the title to an interest in real estate, creating an equitable restriction binding on subsequent purchasers. *Smith v. Wedgewood Builders Corp.*, 134 N.H. 125, 131 (1991); *see also North Bay Council, Inc. v. Bruckner*, 131 N.H. 538, 546 (1989).

■ Before the plaintiffs' contract rights became vested, the seller was obligated to provide clear title. The seller was unable to accomplish this feat, due to the State's right of first refusal granted by RSA 422:46. The plaintiffs' rights had not approached the entitlement that only can be removed "for cause" which is the hallmark of property. *See Riblet Tramway Co.*, 129 N.H. at 147. Therefore, RSA 422:46 was not unconstitutionally applied in transaction one, as it did not deprive the plaintiffs of any right rising to the level of property. As the plaintiffs do not argue that RSA 422:46 was unconstitutionally applied in transaction two, we do not address that issue.

## III. Tortious Interference with Contractual Relations

We next turn to the plaintiffs' claims against the defendants under RSA chapter 541-B, addressing first whether sovereign immunity bars the tortious interference with contractual relations claim. We note that the trial court dismissed Hodgdon and Bradley from claims arising out of state law, pursuant to RSA 541-B:9-a (1997). The plaintiffs do not challenge this dismissal.

■ The plaintiffs first argue that the State is not entitled to sovereign immunity on this claim. Though the trial court did not directly address this issue, we do so because sovereign immunity is a question of subject matter

jurisdiction, *see LaRoche, Adm'r v. Doe*, 134 N.H. 562, 566-67 (1991), which cannot be conferred by consent of the parties. *Smith v. N.H. Bd. of Psychologists*, 138 N.H. 548, 551 (1994).

█ Pursuant to the doctrine of sovereign immunity, the State may not be sued in State court without its consent. *Mahan v. N.H. Dep't of Admin. Services*, 141 N.H. 747, 749 (1997) (citing *Tilton v. Dougherty*, 126 N.H. 294, 297 (1985)). The legislature waived the State's sovereign immunity when it enacted RSA chapter 541-B, subject to several exceptions. *Id.* Sovereign immunity is not waived for

> [a]ny claim arising out of an intentional tort, including ... interference with contractual relations, provided that the employee whose conduct gives rise to the claim reasonably believes, at the time of the acts or omissions complained of, that his conduct was lawful, and provided further that the acts complained of were within the scope of official duties of the employee for the state.

RSA 541-B:19, I(d) (1997). Thus, the State has immunity on the tortious interference with contractual relations claim brought by the plaintiffs *unless* defendants Hodgdon and Bradley did not reasonably believe their conduct was lawful or acted beyond the scope of their official duties.

The plaintiffs argue that Hodgdon and Bradley exceeded the scope of their official duties with respect to transaction one by refusing to exercise or waive the State's right of first refusal and by attempting to invoke RSA 422:46 when the State lacked sufficient funds to match the offered price. The plaintiffs argue that Hodgdon and Bradley exceeded the scope of their official duties with respect to transaction two by attempting to invoke RSA 422:46 when there was no purchase and sale agreement in place, by attempting to prevent the subdivision of the property, and by using non-airport portions of the property to finance the purchase of the airport property.

In order to determine whether Hodgdon and Bradley reasonably believed they were acting lawfully and within the scope of their official duties, we must examine the statute governing their authority to act. As in all cases involving statutory interpretation, the starting point is the language of the statute. We construe each statute as a whole, and if the statute's language is clear and unambiguous, we do not look beyond the language to discern legislative intent. If a statute is ambiguous, however, we consider legislative history to aid our analysis. Our goal is to apply

statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *State v. Whittey*, 149 N.H. 463, 467 (2003).

The statute at issue does not offer much detail. It does not explain what is meant by "offered for sale," whether it means a purchase and sale agreement has been signed, or merely that the owner of the airport has posted a notice expressing his desire to sell. RSA 422:46, I. The statute fails to explain how much time the State has to exercise its right of first refusal. *See id.* Nor does it explain where the funds might be found that are "available" to the director of the division of aeronautics for the purpose of purchasing the airport, *see id*; *i.e.*, whether the division of aeronautics could request more funding from the legislature or seek financing from third parties, or whether it must rely on the funds actually sitting in its coffers. While the language itself is clear, the lack of detail renders the statute ambiguous.

Absent helpful guidance from the legislative history, we will interpret the statute in light of the plain and ordinary meanings of the words used. *Estate of Ireland v. Worcester Ins. Co.*, 149 N.H. 656, 661 (2003). An airport is offered for sale either when it is offered to the public for sale, as through a public listing, or, in the case when it is offered privately to a potential buyer, when the purchase and sale agreement is signed.

■ The statute does not give an indication of how much time the State has to exercise its right of first refusal. Because no time for performance is specified, we hold under general principles of contract law, that the State must exercise or waive its right of first refusal within a reasonable time. *Belleau v. Hopewell*, 120 N.H. 46, 51 (1980). With this interpretation in mind, we hold that the State may use whatever funds it has available or acquires within the reasonable time it has to exercise its right of first refusal.

■ Regarding transaction one, we conclude that Hodgdon and Bradley had a reasonable belief their conduct was lawful, and were acting within the scope of their official duties. Both Hodgdon and Bradley, after being notified of the pending transaction little more than twenty days before it was to be consummated, asked the parties for more time to review it before coming to a decision. We hold that the failure to exercise or waive the right of first refusal between March 8, 1999, and March 31, 1999, does not amount to failure to exercise the right within a reasonable time. Further, we conclude that Hodgdon's and Bradley's invocation of the statute, despite lacking sufficient liquid funds, does not belie a reasonable

belief that their conduct was lawful and was not beyond the scope of their official duties. The statute allows the State to use whatever funds are "available," liquid or no. Therefore, we find there are no genuine issues of material fact regarding whether Hodgdon and Bradley believed they were acting lawfully and within the scope of their official duties.

 Regarding transaction two, however, we find that there are genuine issues of material fact as to whether Hodgdon and Bradley believed they were acting lawfully and whether they were acting within the scope of their duties when they invoked RSA 422:46 while the property was not offered for sale, sought to enjoin the subdivision of the property, and allegedly attempted to use non-airport portions of the property to finance its purchase.

It may be the case that Hodgdon and Bradley sought to enjoin the subdivision of the property, which was one of the steps of transaction two, in a good faith attempt to exercise the State's right of first refusal as to transaction one. However, that transaction had expired more than three months before the State sought the injunctive relief from the trial court, and it is not clear what the State knew about transaction two—especially since the plaintiffs' actions concerning that transaction are not stipulated.

The plaintiffs have alleged that the defendants were working with private investors to finance the purchase of the airport under the terms of transaction one. The State denies this. In any event, there is no authorization for, or prohibition against, private financing in the statute. There are sufficient allegations to warrant a hearing on the issue of whether the defendants reasonably believed they were acting lawfully and within the scope of their duties, and, thus, whether the State is entitled to immunity on the plaintiffs' claim of tortious interference with contractual relations. We remand this case to the trial court for a determination of these facts.

The trial court's grant of summary judgment on the tortious interference with contractual relations claim is flawed because there are unresolved factual questions surrounding the State's immunity to suit on this claim. If the State is not immune from suit, however, it still may be entitled to summary judgment on the merits of the claim. We therefore examine the trial court's grant of summary judgment to the State on the merits of the tortious interference with contractual relations claim.

 To establish liability for intentional interference with contractual relations, a plaintiff must show: (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship;

(3) the defendant *intentionally* and *improperly* interfered with this relationship; and (4) the plaintiff was damaged by such interference. *Demetracopoulos v. Wilson*, 138 N.H. 371, 373-74 (1994).

The trial court found that the State did not tortiously interfere with contractual relations because it was asserting a legally-protected interest, *i.e.*, the State's right of first refusal granted by RSA 422:46. However, the trial court did not differentiate between transaction one and transaction two. With regard to transaction one, the trial court's grant of summary judgment to the State was correct; there is no genuine issue of material fact as to whether the State *intentionally* and *improperly* interfered with the plaintiffs' relationship with the owner of the airport. The State and Hodgdon and Bradley were acting pursuant to the statute by requesting additional time to review transaction one before exercising or waiving the right of first refusal. Such actions cannot be termed improper interference.

However, we conclude that there are genuine issues of material fact concerning whether the State tortiously interfered with transaction two. The affidavits submitted by the plaintiffs allege that they had an economic relationship with the owner of the airport, that the State was aware of this relationship and that the plaintiffs were damaged by its interference. The State claims the law suit was filed to prevent the subdivision of the property in order to exert its right of first refusal under transaction one. The plaintiffs claim the law suit was filed to prevent the subdivision of the property so the State could pursue a third-party financing arrangement, which is neither explicitly allowed nor explicitly prohibited by RSA 422:46. There are genuine issues of material fact as to whether the State's actions amounted to intentional and improper interference. These issues of fact must be decided by the trial court in the first instance. Therefore, we reverse the trial court's grant of summary judgment on the issue of tortious interference with contractual relations regarding transaction two. If the State is not entitled to sovereign immunity, the plaintiffs may proceed with this claim against it.

*IV. 42 U.S.C. § 1983*

Next we address the plaintiffs' claims against the defendants under 42 U.S.C. § 1983. We begin with the plaintiffs' contention that the defendants are not immune from suit on this claim.

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

The plaintiffs argue that the State is not immune from suit because 42 U.S.C. § 1983 is a federal law, and state law cannot immunize a party from suit under federal law. "It is settled beyond peradventure, however, that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991), *cert. denied*, 502 U.S. 1063 (1992); *see also Schwartz v. State*, 135 N.H. 470, 475 (1992). Consequently, the plaintiffs have no cause of action against the State under 42 U.S.C. § 1983. We affirm the trial court's grant of summary judgment on this issue.

The plaintiffs also brought a section 1983 claim against Hodgdon and Bradley in their official capacities. However, in a suit for retrospective relief, *i.e.*, such as money damages for past conduct, as alleged here, neither the State nor its officials when acting in their official capacity are "persons" within the meaning of 42 U.S.C. § 1983. *Schwartz*, 135 N.H. at 475; *see Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989). Therefore, the plaintiffs have no section 1983 claim against Hodgdon and Bradley in their official capacities. We note that while a state official may be sued in his or her official capacity for injunctive relief, *see Will*, 491 U.S. at 71 n.10, the plaintiffs do not appeal the denial of their request for injunctive relief.

The plaintiffs also pursued an action under 42 U.S.C. § 1983 against Hodgdon and Bradley in their individual capacities. To determine whether this suit can be maintained, we examine the doctrine of qualified immunity, which is a creature of federal law. *Richardson v. Chevrefils*, 131 N.H. 227, 232 (1988). It provides an affirmative defense to actions brought to redress claimed violations of interests protected under the Federal Constitution that may be pleaded in either a constitutional tort action, or an action maintained under 42 U.S.C. § 1983. *Id.* Under the doctrine, "government officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

■ We have employed a three-part test to determine whether a public official is entitled to qualified immunity: (1) whether a plaintiff has established a constitutional violation; (2) whether that right was clearly established at the time of the violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue. *Porter v. City of Manchester*, 151 N.H. 30, 48 (2004) (citing *Mihos v. Swift*, 358 F.3d 91, 102 (1st Cir. 2004)).

■ As discussed above, the plaintiffs were not able to establish that they were unconstitutionally deprived of their contract rights by the defendants. The plaintiffs have not established any other violation of their constitutional rights. Therefore, Hodgdon and Bradley are entitled to qualified immunity; they cannot be sued under 42 U.S.C. § 1983 in their individual capacities.

*V. Procedural Flaw in the Defendants' Motion*

Finally, the plaintiffs argue that the defendants' motion for summary judgment was procedurally flawed, as it was not supported by an affidavit, but instead was supported by a copy of the decision of the Carroll County Superior Court in the State's suit against the plaintiffs. However, we do not need to decide this issue, as we are reversing the trial court's motion for summary judgment on the only claim that can proceed. Since we hold that the trial court erred in granting summary judgment in the tortious interference with contractual relations claim against the State, if the State is not immune, we need not address the plaintiffs' argument regarding the procedural flaws in the defendants' motion.

*VI. Conclusion*

We hold that the plaintiffs lack standing to assert that RSA 422:46 is unconstitutional on its face. RSA 422:46 was not unconstitutionally applied to the plaintiffs. The defendants are immune from suit on the 42 U.S.C. § 1983 claims. We also hold that Hodgdon and Bradley are immune from suit on the tortious interference with contractual relations claim. The only claim remaining is the tortious interference with contractual relations claim against the State, if, on remand, the trial court finds that the State is not immune from suit.

We remand for a hearing to determine whether Hodgdon and Bradley acted reasonably and within the scope of their official duties, and consequently whether the State is immune from the plaintiffs' suit for tortious interference with contractual relations. If the trial court finds that the State is not immune, then, as noted, the plaintiffs have made sufficient allegations to proceed with their claim for tortious interference with contractual relations against the State regarding transaction two.

*Affirmed in part; reversed in part; and remanded.*

BRODERICK, C.J., and NADEAU, DUGGAN and GALWAY, JJ., concurred.