NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

—————————————

Hillsborough–northern judicial district
No. 2014-0580


JEFFREY FROST & a.

v.

MICHAEL DELANEY & a.

Argued: June 24, 2015
Opinion Issued: November 17, 2015


Douglas, Leonard & Garvey, P.C., of Concord (Richard J. Lehmann and Charles G. Douglas, III on the brief, and Mr. Douglas orally), for the plaintiffs.


Joseph A. Foster, attorney general (Brian W. Buonamano, assistant attorney general, on the brief and orally), for defendants New Hampshire Banking Department, Kathleen Sheehan, and State of New Hampshire.


CONBOY, J. This appeal and cross-appeal arise out of a civil action by the plaintiffs, Jeffrey Frost, Frost Family, LLC (Frost Family), and Chretien/Tillinghast, LLC (Chretien), against Michael Delaney, individually and as former attorney general; the State of New Hampshire; the New Hampshire Banking Department (the Department); Karen Gorham, individually and as former assistant attorney general; Peter Hildreth, individually and as former commissioner of the Department; Maryam Torben Desfosses, individually and

as hearings examiner for the Department; and Kathleen Sheehan, individually and as bank examiner for the Department, for their actions in the investigation and prosecution of Frost for alleged violations of RSA chapter 397-A. The plaintiffs appeal only orders of the Superior Court (Brown, J.) granting the defendants' motion for summary judgment on the plaintiffs' 42 U.S.C. § 1983 (2012) claim (§ 1983 claim) against Sheehan on the ground that she is entitled to qualified immunity, and dismissing their negligent supervision claims against Hildreth and Desfosses on the ground that they are entitled to absolute prosecutorial immunity. Defendants the State of New Hampshire, the Department, and Sheehan cross-appeal. We affirm.

I. Background

This is the second opinion we have issued in connection with the prosecution of Frost for allegedly violating RSA chapter 397-A. See Frost v. Comm'r, N.H. Banking Dep't, 163 N.H. 365 (2012). We begin by reviewing the statutory backdrop to this case and summarizing the relevant facts drawn from the trial court's orders, the record, and our prior opinion.

RSA chapter 397-A governs the licensing of nondepository mortgage bankers and brokers. See RSA ch. 397-A (2006 & Supp. 2014). In March 2009, RSA 397-A:3 required persons engaged in the business of making or brokering mortgage loans to obtain a license from the Department. RSA 397-A:3, I (Supp. 2008) (amended 2012). RSA 397-A:4, II (2006) (amended 2009) exempted from licensure "[a]ny natural person making not more than 4 first mortgage loans within any calendar year." Effective July 2009, the legislature removed the exemption for natural persons making four or fewer mortgage loans within a year. See RSA 397-A:4 (Supp. 2009) (amended 2011, 2012, 2013). In addition, effective July 2009, the legislature enacted RSA 397-A:1, XIII-a, which provides that "'[m]ortgage lender' means a mortgage banker." Laws 2009, 290:7.

Chretien and Frost Family are New Hampshire limited liability companies organized for the purpose of real estate acquisition, holding, and development. Frost, 163 N.H. at 368. Frost is a member and designated manager of Chretien and a member of Frost Family. Id. In March 2009, Chretien sold one of its properties to Robert Recio and his housemate in a seller-financed real estate transaction. See id. at 368. In late December 2009, Recio filed a complaint against Chretien with the Consumer Protection Bureau of the Attorney General's Office alleging, among other things, that the plaintiffs had fraudulently induced him to enter into the sale. Id. The complaint was forwarded to the Department, which assigned investigation of the complaint to Sheehan.

On February 22, 2010, Sheehan, Gorham, and Manchester Police Department officials drafted an application for a warrant to search Frost's

residence, which also served as the business address for Chretien, for evidence that the plaintiffs had participated in unlicensed mortgage lending in violation of RSA chapter 397-A. The supporting affidavit averred that Frost, as a member of Chretien, "had acted as a Mortgage Banker" with regard to the conduct complained of in Recio's complaint.

The next day, the Manchester District Court (Ryan, J.) granted the search warrant application. Judge Ryan noted on the application that he had "inquired of . . . Sheehan regarding her investigation and what she had learned about Frost acting as a Mortgage Banker . . . Sheehan informed the Court that she looked at [the] mortgage registered with [the] Registry of Deeds which listed Chretien/Tillinghast as the mortgage banker. Frost had been the representative of Chretien/Tillinghast." (Emphasis added.) In fact, the mortgage deed listed Chretien as the lender.

Subsequently, Manchester police officers executed the search warrant. Shortly thereafter, Frost was arrested and charged with four class A misdemeanors alleging violations of RSA chapter 397-A. The district court later granted Frost's motion to suppress the evidence obtained as a result of the search. The court found that Sheehan misrepresented that Chretien was listed as the "Mortgage Banker" in the Recio transaction and that her misrepresentation was material. The court, therefore, determined that the warrant application lacked probable cause. Thereafter, the court granted Frost's motion to dismiss the criminal charges.

On March 23, the Department initiated administrative proceedings against Frost. See Frost, 163 N.H. at 369. After unsuccessfully attempting to resolve those claims, the plaintiffs initiated a declaratory judgment action in superior court, seeking to stay the administrative proceedings until the issue of the Department's jurisdiction could be resolved. The trial court granted a preliminary injunction against further Department administrative proceedings, concluding that the Department lacked jurisdiction to take action against Frost for his conduct relating to the Recio mortgage transaction and to a separate seller-financed real estate transaction involving Frost Family. See id. at 370. The Department appealed, and we affirmed the trial court's decision. See id. at 367-68. We concluded that neither Frost Family nor Chretien "engaged in the business of making or brokering mortgage loans." Id. at 376 (quotation omitted); see RSA 397-A:2, I (Supp. 2014). We further held that Frost was not subject to disciplinary action by the Department based upon the two disputed transactions because when they occurred, neither Frost Family nor Chretien was a mortgage banker or broker under RSA chapter 397-A. Frost, 163 N.H. at 376-77.

The plaintiffs then brought this action against the defendants, asserting various claims, including a § 1983 claim against Delaney, Hildreth, Gorham, Desfosses, and Sheehan. Specifically, the plaintiffs alleged that, in the course

of obtaining the search warrant, Sheehan misrepresented material facts when she told Judge Ryan that Chretien was listed on the Recio mortgage as a mortgage banker. They claimed that this misrepresentation violated their right to be free from unreasonable search and seizure under the Fourth Amendment to the Federal Constitution as well as Frost's rights to substantive and procedural due process under the Fourteenth Amendment to the Federal Constitution. The plaintiffs also brought negligent supervision claims against Delaney, Hildreth, Desfosses, the State of New Hampshire, and the Department for allegedly failing to supervise employees within the Department and the Attorney General's Office.

Subsequently, the trial court granted the defendants' motion to dismiss the negligent supervision claims. Following a hearing on the defendants' later summary judgment motion, the court found that the doctrine of official immunity bars the plaintiffs' state constitutional and intentional infliction of emotional distress claims. It further found that the doctrine of qualified immunity bars the plaintiffs' § 1983 claims. Accordingly, the court granted the defendants' motion for summary judgment on those claims. The plaintiffs unsuccessfully sought reconsideration of both the trial court's order dismissing their negligent supervision claims against Hildreth and Desfosses and the order granting summary judgment in favor of the remaining defendants on the § 1983 claims. This appeal and cross-appeal followed.

II. Plaintiffs' Appeal

A. Motion for Summary Judgment

We first consider the plaintiffs' argument that the trial court erred by granting summary judgment on their § 1983 claim against Sheehan on the ground that she was entitled to qualified immunity. We note that the plaintiffs do not appeal the trial court's ruling that official immunity bars their state constitutional and intentional infliction of emotional distress claims.

We review "a grant of summary judgment based on qualified immunity de novo." McInerney v. King, 791 F.3d 1224, 1227 (10th Cir. 2015) (quotation omitted). We consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. Hughes v. N.H. Div. of Aeronautics, 152 N.H. 30, 35 (2005); see also McInerney, 791 F.3d at 1227. If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment. Hughes, 152 N.H. at 35.

We begin by reviewing the doctrine of qualified immunity. The doctrine of qualified immunity is a creature of federal law. Id. at 42. Under the doctrine, "government officials performing discretionary functions, generally are

4

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014). Courts may exercise discretion in deciding which of the prongs "should be addressed first in light of the circumstances in the particular case at hand." Conrad v. N.H. Dep't of Safety, 167 N.H. 59, 74 (2014) (quotation omitted); see also Tolan, 134 S. Ct. at 1866. The first prong "asks whether the facts taken in the light most favorable to the party asserting the injury, show the [officials'] conduct violated a federal right." Tolan, 134 S. Ct. at 1865 (quotation, brackets, and ellipsis omitted). The second prong "asks whether the right in question was 'clearly established' at the time of the violation." Id. at 1866 (quotation omitted). This inquiry generally "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (quotations and citation omitted).

In other words, the official is entitled to immunity unless her actions violated "legal norms clearly established at the time of the challenged actions." Richardson v. Chevrefils, 131 N.H. 227, 232 (1988) (quotation and ellipsis omitted). "This standard eliminates from consideration allegations about the official's subjective state of mind, such as bad faith or malicious intention, concentrating the inquiry upon the 'objective reasonableness' of the official conduct." Floyd v. Farrell, 765 F.2d 1, 4 (1st Cir. 1985). Indeed, "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley v. Briggs, 475 U.S. 335, 341 (1986). Nonetheless, the determination of whether the official's conduct is objectively legally reasonable "will often require examination of the information possessed by the" official, Anderson, 483 U.S. at 641, and "must be undertaken in light of the specific context of the case, not as a broad general proposition," Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quotation omitted). "In the absence of clearly established law, an official is not expected to anticipate how courts will later illuminate the law's grey areas, whereas clear law at the relevant time will preclude immunity unless an official can demonstrate extraordinary circumstances that could be said to have relieved her of responsibility to know the law's content." Richardson, 131 N.H. at 232 (citations omitted).

"The plaintiff bears the burden of demonstrating that the law was clearly established at the time of the alleged violation, and it is a heavy burden indeed." Mitchell v. Miller, 790 F.3d 73, 77 (1st Cir. 2015); see Snider v. City of Cape Girardeau, 752 F.3d 1149, 1155 (8th Cir. 2014). "This exacting standard gives governmental officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who

5

knowingly violate the law." Mitchell, 790 F.3d at 77 (quotation omitted); see Malley, 475 U.S. at 341.

Here, as the trial court noted, the only dispute regarding whether qualified immunity bars the plaintiffs' § 1983 claim against Sheehan is whether, under the second part of the qualified immunity test, a reasonable person would have understood that her conduct violated the plaintiffs' constitutional rights. With that in mind, we turn to the plaintiffs' arguments.

### 1. Alleged Incompetence

The plaintiffs argue that the trial court failed to recognize that Sheehan's "plain incompetence" precludes her qualified immunity defense. As evidence of Sheehan's incompetence, they point to her failure to know "the black letter law in effect at the time of the [disputed] transaction" as well as the trial court's findings that Sheehan was unfamiliar with certain basic aspects of the subject matter she was assigned to investigate and was "not qualified to handle the level of sophistication necessary to investigate real estate installment contracts, or make affirmative representations concerning real estate sales to a district court judge." Based upon this evidence, they contend that Sheehan should have been denied the protection of qualified immunity.

The defendants counter that the record does not establish that Sheehan was incompetent. Instead, they argue that, "[i]n light of the [Department's] understanding of how the term 'mortgage banker' was defined," reasonably competent bank examiners could disagree as to whether Sheehan's statements were accurate. Therefore, they contend that immunity is not precluded.

Defendants will not be entitled to qualified immunity "if, on an objective basis, it is obvious that no reasonably competent" official would have made the disputed error; "but if [officials] of reasonable competence could disagree on [the] issue, immunity should be recognized." Malley, 475 U.S. at 341. As explained above, this standard focuses upon the facts of the particular case and whether a reasonable defendant would have understood that her conduct violated the plaintiffs' rights, as well as the clarity of the law at the time of the alleged violation. See Conrad, 167 N.H. at 73. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson, 483 U.S. at 640 (citation omitted). There need not be a "case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. Al-Kidd, 131 S. Ct. 2074, 2083 (2011).

We cannot say that the law was clearly established at the time of the alleged violation so that officials of reasonable competence could not disagree on the issue of whether Frost was acting as "mortgage banker" at the time of

the Recio mortgage transaction.  Sheehan made her statements that Frost was acting as a "mortgage banker" in February 2010, before we decided Frost, Frost, 163 N.H. at 376-77, and after RSA chapter 397-A was amended to provide that "'mortgage lender' means mortgage banker," see RSA 397-A:1, XIII-a.  Thus, when she made her statements, "mortgage banker" and "mortgage lender" were arguably synonymous terms.  Accordingly, we conclude that the trial court did not err in determining that Sheehan was not precluded from entitlement to qualified immunity.

### 2.  Objective Standard

The plaintiffs further contend that the trial court erred by applying a subjective rather than an objective standard in evaluating the qualified immunity defense.  They maintain that the trial court improperly relied upon what it found to be Sheehan's actual "'good faith'" beliefs, rather than applying an "objective 'reasonable person' test."

The interpretation of a trial court order is a question of law, which we review de novo.  Choquette v. Roy, 167 N.H. 507, 513 (2015).  We conclude that the trial court applied the correct standard.

The trial court determined that Sheehan's "misrepresentations to Judge Ryan were made based on [her] good faith application of the [Department's] policy concerning the relationship between mortgage bankers and mortgage lenders."  The court concluded, therefore, "that a similarly situated official would not have believed the misrepresentations violated Mr. Frost's constitutional rights."  In its order on the plaintiffs' motion for reconsideration, the court further explained:

> Even if the Court were to strip the "good faith" aspect from its finding, the result remains the same.  According to Ms. Sheehan's objective knowledge, it was the policy of the [Department] to treat mortgage bankers and mortgage lenders synonymously.  Former Assistant Attorney General Karen Gorham's testimony at the hearing confirmed this policy.  To find that Ms. Sheehan's actions were objectively reasonable, therefore, is not, as the plaintiffs contend a reward of ignorance.  Ms. Sheehan did not equate the terms mortgage banker and mortgage lender simply because she did not know any better.  Her overall lack of knowledge notwithstanding, the Court finds it is objectively reasonable for a Bank Examiner to be familiar with and follow the internal policies of the Banking Department.

Although, as the plaintiffs point out, the trial court used the term "good faith," implying that it considered Sheehan's subjective state of mind, it then applied an objective standard to reach its conclusion that Sheehan's conduct

7

was objectively legally reasonable. The court examined the facts of the case and the information Sheehan possessed when she made the statement to Judge Ryan and assessed whether a reasonable person in her position would have understood that equating "mortgage lender" with "mortgage banker" violated the plaintiffs' rights. See Conrad, 167 N.H. at 73; see also Anderson, 483 U.S. at 641.

The plaintiffs maintain that "[i]f the trial court had used a truly objective [standard,] it would not have used the alleged fact that Sheehan was following an unofficial departmental 'policy.'" We disagree. The trial court was permitted to examine the "specific context of the case" in determining whether Sheehan's conduct was objectively reasonable. Saucier v. Katz, 533 U.S. 194, 201 (2001). Moreover, contrary to the plaintiffs' contention, the court's statement that it was objectively reasonable for a bank examiner to be familiar with, and follow, internal Department policies was not an analysis of the Department's subjective belief. It was an analysis of whether a reasonable Department official would understand that what she was doing violated the law. See Snider, 752 F.3d at 1155.

To the extent that the plaintiffs argue that there is a material issue of disputed fact as to whether there existed an informal policy equating mortgage banker with mortgage lender, we disagree. To defeat a motion for summary judgment, "the adverse party may not rest upon mere allegations or denials of his pleadings, but his response, by affidavits or by reference to depositions, answers to interrogatories, or admissions, must set forth specific facts showing that there is a genuine issue for trial." RSA 491:8-a, IV (2010). The appellate record contains no affidavit, deposition, answer to interrogatory, or admission setting forth specific facts to bolster the plaintiffs' contention that an informal policy did not exist. As such, this contention was insufficient to defeat summary judgment. Cf. Tolan, 134 S. Ct. at 1867-68 (vacating grant of summary judgment to officer on qualified immunity grounds because court had "credited the evidence of the party seeking summary judgment and failed properly to acknowledge key evidence offered by the party opposing that motion").

Alternatively, the plaintiffs contend that such a policy, even if it existed, contravened the plain language of the statute in effect when Frost executed the mortgage. The protection of qualified immunity applies, however, "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotation omitted). As such, it is not enough for a § 1983 plaintiff to merely show mistake — a "plaintiff must also show that his clearly established constitutional rights were violated (i.e., that a reasonable [government official] would have known that he was violating those rights at the time of the challenged decision)." Bell v. Norwood, No. 2:11–CV–3732–RDP, 2014 WL 4388348, at *9 (N.D. Ala. Aug. 28, 2014). As stated above, we cannot

say that the law was clearly established at the time of the alleged violation so that officials of reasonable competence could not disagree on the issue of whether "mortgage banker" was synonymous with "mortgage lender." Thus, the mere fact that Sheehan relied upon the unofficial policy does not necessarily preclude the application of qualified immunity.

### 3. Recklessness

The plaintiffs further argue that the trial court erred in determining that Sheehan's conduct was not reckless. In making this argument, they rely upon language in Burke v. Town of Walpole, 405 F.3d 66, 82 (1st Cir. 2005). However, the language upon which they rely applies in the context of the first prong of the qualified immunity inquiry — whether the plaintiff has established a constitutional violation. See Burke, 405 F.3d at 81-82. As the trial court noted, the only dispute in this case concerns the second prong of the qualified immunity inquiry — whether a reasonable person would have understood that her conduct violated the plaintiffs' constitutional rights. To the extent that the plaintiffs use the term "recklessly" as a synonym for "incompetent" under the second prong of the qualified immunity inquiry, as we explained, the trial court did not err when it failed to find that Sheehan was not plainly incompetent so as to preclude immunity. See Brennan v. Hendrigan, 888 F.2d 189, 192 (1st Cir. 1989). Moreover, to the extent that the plaintiffs contend that the trial court incorrectly applied a subjective standard in determining whether Sheehan acted recklessly, we are not persuaded. As discussed above, the trial court applied an objective standard to reach its conclusion that Sheehan's conduct was objectively legally reasonable.

### 4. Discretionary Authority

The plaintiffs next argue that the trial court erred by finding that Sheehan's response to Judge Ryan's inquiry constituted a discretionary act. They maintain that Sheehan's responsibility was to provide the judge with "factual information, not legal interpretation," and that there is no "room for discretion, interpretation or spin in responding to judicial inquiry." We find no error with the trial court's determination that Sheehan's conduct was discretionary.

As a threshold matter, we note that the trial court's ruling regarding whether Sheehan's conduct was discretionary was in the context of its official immunity analysis under state law. See Everitt v. Gen. Elec. Co., 156 N.H. 202, 219-21 (2007). Because neither party argues for a different standard in the qualified immunity context, for purposes of this appeal, we will apply that standard.

Under official immunity, government officials are protected from personal liability for those decisions, acts or omissions that are: (1) made within the

9

scope of their official duties while in the course of their employment; (2) discretionary rather than ministerial; and (3) not made in a wanton or reckless manner. Id. at 219. A discretionary decision, act, or omission involves the exercise of personal deliberation and individual professional judgment that necessarily reflects the facts of the situation and the professional goal. Id. Such decisions include those for which there are no hard and fast rules as to the course of conduct that must be followed and those acts requiring the exercise of judgment involving what is just and proper under the circumstances. Id. at 219-20. By contrast, "an official's decision, act or omission is ministerial when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts." Id. at 220. "Ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion" and includes those decisions, acts, or omissions "imposed by law with performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." Id. (quotations omitted).

Here, we agree with the trial court that Sheehan's answer to Judge Ryan's inquiry involved "deliberation, judgment and decision making." Sheehan was assigned by the Department to investigate whether the plaintiffs had engaged in unlicensed mortgage lending in violation of RSA chapter 397-A. Sheehan testified that, because she was not able to obtain the information she requested from Frost and Chretien's attorney, it was decided that "[t]he next step [was] . . . to obtain search warrants to gather the information that we needed to continue the investigation." Although there is no discretion to commit perjury, see RSA 641:1 (2007), here, Sheehan's response to Judge Ryan's question occurred as part of her investigation and involved the exercise of personal deliberation and individual professional judgment that necessarily reflects the facts of the situation and the professional goal, see Everitt, 156 N.H. at 219. Furthermore, as we explained, a reasonably competent official could have concluded that Frost was acting as a mortgage banker at the time of the Recio mortgage transaction. We, therefore, conclude that the trial court did not err by finding that Sheehan's conduct was discretionary.

B. Motion to Dismiss

The plaintiffs argue that the trial court erred by dismissing their negligent supervision claims against Hildreth and Desfosses. The trial court found that those claims involved "investigating, initiating and continuing the civil proceedings against Frost," which were "similar to the responsibility of a criminal prosecutor in initiating and prosecuting criminal cases." It, therefore, dismissed them on the basis of absolute prosecutorial immunity. See Van de Kemp v. Goldstein, 555 U.S. 335, 343-48 (2009). It subsequently found that Sheehan's statements to Judge Ryan "did not include the functions of a prosecutor and [were] therefore not protected by prosecutorial immunity."

10

The plaintiffs argue that it was error for the trial court to dismiss their negligent supervision claims on prosecutorial immunity grounds because Sheehan was not entitled to the same immunity. Whether Hildreth and Desfosses are immune from liability on the basis of prosecutorial immunity because their alleged conduct was "analogous to [that] of a prosecutor," Butz v. Economou, 438 U.S. 478, 515 (1978), is a separate inquiry from whether Sheehan was immune from liability on the basis of prosecutorial immunity because her alleged conduct was akin to that of a prosecutor. As the trial court found, "Sheehan's non-immune conduct does not strip Hildreth and Desfosses of their immunity." Consequently, we cannot say that the trial court erred by granting the defendants' motion to dismiss as to Hildreth and Desfosses.

III. Defendants' Cross-Appeal

Finally, defendants the State of New Hampshire, the Department, and Sheehan raise two issues in their notice of cross-appeal. However, because they have not briefed those issues, we deem them waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

DALIANIS, C.J., and LYNN and BASSETT, JJ., concurred.

11