Coos
No. 2013-743

RAYMOND CHOQUETTE *& a.*

v.

JASON ROY

RAYMOND CHOQUETTE *& a.*

v.

THOMAS ROBICHAUD *& a.*

RAYMOND CHOQUETTE *& a.*

v.

PHILIPPE E. ROY *& a.*

Submitted: January 7, 2015
Opinion Issued: April 3, 2015

*Cooper Cargill Chant, P.A.*, of North Conway (*Christopher T. Meier* on the brief), for Raymond and Pamela Choquette.

*John L. Riff, IV*, of Lancaster, by brief, for Jason Roy, Thomas and Kelly Robichaud, and Philippe E. Roy.

CONBOY, J. Raymond and Pamela Choquette (the petitioners), filed separate petitions against Philippe E. Roy (P.E. Roy), individually and as trustee of the Roy Family Trust, Jason Roy, and Thomas and Kelly Robichaud (the respondents). These consolidated actions relate to the transfer of, use of, and access to certain parcels of land originally owned by the petitioners and currently owned by the respondents. The petitioners appeal an order of the Superior Court (*Vaughan*, J.), and the respondents cross-appeal. We affirm in part, reverse in part, and remand.

*I. Background*

The trial court found, or the record supports, the following facts. In 1986, the petitioners purchased approximately 400 acres of land off Hall Stream Road in Pittsburg. By 1988, the petitioners had begun subdividing and selling portions of this 400-acre parcel, some of which they conveyed to various buyers on a lot-by-lot basis. Between 1988 and 2002, many of the parcels conveyed were subject to restrictive covenants; the deeds, however, did not contain uniform covenants.

In 1999, the petitioners sold a 103-acre tract to P.E. Roy and his late wife. The deed for this parcel contained two easements over the petitioners' land: a fifty-foot right-of-way to Hall Stream Road and a twenty-foot right-of-

way. The fifty-foot right of way would have connected the 103-acre parcel directly to Hall Stream Road, but it has not been constructed.

The deed stated that P.E. Roy and his wife were responsible for the construction costs of the twenty-foot right-of-way and also for its maintenance, as long as they were the "sole users of said right-of-way." The deed further specified that when they were no longer its sole users, the maintenance was to be "apportioned equally between the users." The twenty-foot right-of-way was constructed and now is referred to as "Roy Boulevard." Roy Boulevard connects the 103-acre parcel to "Sugar Shack R.O.W.," which is a road owned by petitioner Raymond Choquette. Roy Boulevard was intended to be a driveway for a future residence on the 103-acre parcel, and was never intended to provide access to permit future development of the parcel; it was, nonetheless, eventually physically widened to fifty feet.

Sugar Shack R.O.W. connects to Hall Stream Road and terminates at the northeastern corner of the 103-acre parcel. Although the only way to access Roy Boulevard is to travel from Hall Stream Road over Sugar Shack R.O.W., the deed to P.E. Roy does not expressly grant him an easement over Sugar Shack R.O.W. P.E. Roy's testimony suggests that he has used Sugar Shack R.O.W. to access the northeastern corner of the 103-acre parcel since he acquired title to the property. P.E. Roy has previously performed maintenance and repairs on both Sugar Shack R.O.W. and Roy Boulevard. The petitioners have objected to P.E. Roy's maintenance of both roads, and, at times, have interfered with P.E. Roy's use of the roads.

In 2002, the petitioners filed an "Application for Registration of a Subdivision" (Subdivision Application) with the New Hampshire Attorney General, which proposed a subdivision of their property with six restrictive covenants (application covenants) for the future lots. In May 2002, a Certificate of Registration was recorded in the Coos County Registry of Deeds, but it did not recite or refer to any restrictive covenants.

In 2004, the petitioners conveyed two parcels identified in the Subdivision Application. First, they sold Lot 33-12 to the Robichauds' predecessor-in-title by a warranty deed that contained restrictive covenants that were "substantively and materially different" from the application covenants. Next, the petitioners conveyed Lot 33-13 to P.E. Roy, as trustee of the George M. Roy Trust, by a warranty deed that also included restrictive covenants that were "substantively and materially different" from the application covenants. At the time that these lots were conveyed, no other lots identified in the Subdivision Application had been conveyed, and the application covenants had not been recorded in the Coos County Registry of Deeds.

The Robichauds purchased Lot 33-12 in 2007 by a warranty deed with a description identical to that contained in their predecessor's 2004 deed. In 2010, Jason Roy acquired Lot 33-13 by a warranty deed with a description identical to that in his predecessor's 2004 deed. In 2011, the petitioners notified the Robichauds and Jason Roy that they wanted to amend the deeds for Lot 33-12 and Lot 33-13 to include the application covenants. The Robichauds and Jason Roy objected to the proposed amendments.

Subsequently, the petitioners filed a petition for declaratory relief against P.E. Roy to prohibit him from using and maintaining Sugar Shack R.O.W. and from maintaining Roy Boulevard. They also filed separate petitions to reform the deeds held by Jason Roy and the Robichauds. The respondents each filed answers and counterclaims, and the trial court consolidated the actions.

Following a bench trial, the trial court denied the petitioners' requests to reform the Robichauds' and Jason Roy's deeds. With respect to the petitioners' request for declaratory relief against P.E. Roy, the trial court concluded that P.E. Roy has the right to travel over Sugar Shack R.O.W. for ingress and egress to his 103-acre parcel but that he has "no right to maintain . . . or interfere with the road." The trial court also ruled that Roy Boulevard "is a common right-of-way that the adjacent landowners may agree to maintain by sharing the costs and responsibilities," and that the petitioners have no independent right to maintain Roy Boulevard. Finally, the trial court found no basis for the respondents' counterclaims for breach of title and bad faith and, consequently, denied their requested recovery of attorney's fees and costs. This appeal followed.

## II. Trial Court's Ruling Regarding P.E. Roy's Easement over Sugar Shack R.O.W.

We first address the petitioners' argument that the trial court erred by granting P.E. Roy an easement over Sugar Shack R.O.W. They assert that the deed to the 103-acre parcel does not include a right of access over Sugar Shack R.O.W. and that the trial court "ignore[d] the doctrine of merger" by relying upon language in the purchase and sale agreement to authorize such a right.

Under the merger doctrine, "prior negotiations must be taken, so far as the construction of the deed is concerned, to have been merged in that instrument, the conclusive presumption being that the whole engagement of the parties, and the extent and manner of it, were reduced to writing." *Wells v. Company*, 47 N.H. 235, 253 (1866) (quotation omitted); *see also Russell v. Hixon*, 117 N.H. 35, 38 (1977). Accordingly, pursuant to this doctrine, agreements between the parties that were included in a contract

for sale are extinguished and merged into the deed. *See* 77 AM. JUR. 2D *Vendor and Purchaser* § 241, at 318 (2006). "The rule that a contract is merged in a deed applies where the deed contains provisions which are inconsistent with provisions in the contract, where the deed varies from that stipulated for in the contract and where the purchaser protests against accepting the deed tendered as full performance of the contract." *Id.* at 319 (footnotes omitted).

The trial court, in evaluating the petitioners' request to prohibit P.E. Roy from using a portion of Sugar Shack R.O.W., "examined" both the deed and the purchase and sale agreement for the 103-acre parcel. The purchase and sale agreement states that the "Seller agrees to give buyers deeded access over existing road owned by Raymond Choquette"; the trial court found that Sugar Shack R.O.W. is the "existing road" referred to in the agreement.

■ The interpretation of a trial court order is a question of law, which we review *de novo. State v. Kay*, 162 N.H. 237, 242 (2011). Based upon our review of the order in this case, we cannot conclude that the trial court relied upon the language in the purchase and sale agreement to reach its decision that P.E. Roy was granted a right to use Sugar Shack R.O.W. Rather, the trial court recognized that P.E. Roy's deed did not include language granting P.E. Roy " 'deeded access over [the] existing road[ ],' " and then correctly recited the law on merger, stating: "As the result of the doctrine of Merger, the purchase and Sale agreement merged into the deed of conveyance and was extinguished." Consequently, we are not persuaded by the petitioners' argument that the trial court ignored the merger doctrine and "pull[ed] the right of access from language in the [purchase and sale agreement], and add[ed] such a right where it is not included in the deed."

We also disagree with the petitioners to the extent that they argue that the trial court erred by granting P.E. Roy a right of access over Sugar Shack R.O.W. because the access was not necessary. Although not expressly stated by the trial court, we interpret its order as finding that P.E. Roy had an easement by implication over Sugar Shack R.O.W.

■ An easement by implication is presumed to exist if, "during unity of title the owner imposes an apparently permanent and obvious servitude on one tenement in favor of another, which at the time of severance of title is in use and is reasonably necessary for the fair enjoyment of the tenement to which such use is beneficial." *Blaisdell v. Raab*, 132 N.H. 711, 716 (1990) (quotation and ellipsis omitted). However, because "this doctrine is based on the theory of an implied grant, the circumstances surrounding the conveyance control." *Id.* The question is whether "the parties could

reasonably have thought that the right was not granted." *Id.* (quotation omitted). The law is well-settled that an easement by implication will not be found merely because it would be convenient to have the grant. *Id.* An easement by implication arises only because the parties so agreed. *Id.* at 717. The issue of whether there was an implied easement is a question of fact for the trial court, and we will not disturb its finding if a reasonable person could have reached the same conclusion based on the evidence presented. *Id.*

■ The trial court concluded that, at the time of conveyance from the petitioners to P.E. Roy, the parties intended to permit access by P.E. Roy over Sugar Shack R.O.W. to the point of its intersection with Roy Boulevard and to the northeast corner of the 103-acre parcel. The trial court granted specific requested factual findings to support this conclusion, including requested findings relating to the easement's necessity. For example, the trial court granted P.E. Roy's requested finding of fact that, at the time of conveyance, "the only road in existence for th[e] subdivision was 'Sugar Shack [R.O.W.],' " and that the only access to Roy Boulevard, and therefore to the 103-acre parcel, is over Sugar Shack R.O.W. to Hall Stream Road. The trial court also found that the separate 50-foot right-of-way to connect the 103-acre parcel directly to Hall Stream Road had not been built. In addition, P.E. Roy testified that he would not have bought the property without the right to travel over Sugar Shack R.O.W. and that he needs the access to reach his house and to repair culverts on his property. The trial court found that P.E. Roy's testimony suggests that he has used Sugar Shack R.O.W. since he acquired title to the 103-acre parcel. The trial court specifically credited P.E. Roy's testimony on this issue and found that Raymond Choquette's testimony to the contrary was not credible. Accordingly, we conclude that the trial court's findings are supported by the record, and such findings are sufficient to establish that a reasonable person would have concluded that, at the time of conveyance, the easement over Sugar Shack R.O.W. was "permanent and obvious" and "reasonably necessary for the fair enjoyment of the [103-acre parcel]." *Blaisdell*, 132 N.H. at 716.

■ The petitioners' argument that the trial court "did not consider that the use of Sugar Shack [R.O.W.] may have been permissive" is misplaced. Adversity is not a requirement for finding an easement by implication. *See id.* at 716-17. Consequently, we conclude that the petitioners have failed to demonstrate that the trial court erred by granting P.E. Roy an easement by implication over Sugar Shack R.O.W.

## III. *Trial Court's Ruling Regarding Maintenance of Sugar Shack R.O.W.*

We next consider P.E. Roy's argument that the trial court erred when it concluded that he, as the dominant estate holder, could not maintain Sugar Shack R.O.W. He asserts that, "unless specifically stated to the contrary, the grantee of a right-of-way takes by implication whatever rights are necessary to enjoy the right-of-way," and that there was no evidence that the parties intended to limit P.E. Roy's use and maintenance of Sugar Shack R.O.W. (Quotation omitted.) We agree.

█ "Generally, the dominant tenant of an easement has a right and the duty to maintain an easement so that it can be used for the purpose for which it was granted, . . . unless otherwise required by the easement or other agreement to the contrary." *Village Green Condo. Ass'n v. Hodges*, 167 N.H. 497, 501 (2015) (quotation and ellipsis omitted); *see also White v. Hotel Co.*, 68 N.H. 38, 42 (1894) ("The grantee of a defined way has the right to do whatever is necessary to make it passable or usable for the purposes named in the grant."). In so doing, however, the owner of the easement may not "increase the burden on the servient estate or unreasonably interfere with the rights" of its owner. 25 AM. JUR. 2D *Easements and Licenses* § 82, at 581 (2004). The petitioners suggest that the rule granting the dominant estate holder the right and duty to maintain the easement is dependent upon whether the easement existed prior to conveyance; they, however, cite no authority, nor have we found any, to support this proposition.

█ Although the trial court concluded that P.E. Roy has the right to travel over Sugar Shack R.O.W. to reach his 103-acre parcel, it found that he had "no right to maintain the road or interfere with the road in any way, including maintenance. . . . Only the [petitioners] have the right to maintain Sugar Shack [R.O.W.]." As explained above, however, the deed makes no mention of Sugar Shack R.O.W., and, therefore, as the trial court noted, the parties did not address its maintenance in the conveyance. The petitioners have not identified any other agreement with P.E. Roy that displaces the common law rule regarding easement maintenance. In the absence of such an agreement to the contrary, P.E. Roy has the right and duty to maintain his easement over Sugar Shack R.O.W. *See Village Green*, 167 N.H. at 503.

The petitioners argue that the trial court correctly prohibited P.E. Roy from maintaining Sugar Shack R.O.W. because "the maintenance [was] already being accomplished by [the petitioners] to serve other lots in [the] subdivision." We note that, even if, as the petitioners assert, "maintenance [is] already being accomplished by [the petitioners]," this fact alone does

not affect P.E. Roy's right to also maintain Sugar Shack R.O.W. *See id.* at 502-03 (discussing maintenance obligations when both dominant and servient estates utilize an easement); RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 4.13, at 631-32 (2000).

The petitioners further assert that the trial court found that P.E. Roy's "maintenance would interfere with the road," and "this interference would subject [them] to 'unnecessary inconvenience.' " Our review of the trial court's order does not support this assertion. Rather, because the trial court found that P.E. Roy "has no right to maintain the road," it did not reach the issue of whether P.E. Roy's specific acts of maintenance interfered with the rights of the petitioners or other users of the easement. We, therefore, hold only that the trial court erred in ruling that P.E. Roy does not have the right and duty to maintain the easement over Sugar Shack R.O.W. Accordingly, we reverse the trial court's ruling on this issue and remand for further proceedings as the trial court deems warranted, including, if necessary, determination of whether P.E. Roy's actions interfered with the rights of the petitioners or other users of the easement. *See* 25 AM. JUR. 2D *Easements and Licenses* § 82, at 581.

*IV. Trial Court's Denial of Deed Reformation Request*

■ The petitioners argue that the trial court erred by denying their request to reform the deeds relating to the lots owned by the Robichauds and by Jason Roy to include the subdivision application covenants. "In order to support reformation, the evidence must show that the instrument is not the true expression of the agreement." *Gagnon v. Pronovost*, 97 N.H. 58, 64 (1951) (quotation omitted). The petitioners' "burden of proof in a reformation action is a heavy one." *Sommers v. Sommers*, 143 N.H. 686, 690 (1999) (quotation omitted). Here, "[a]fter reviewing all of the testimony and exhibits," the trial court concluded that the petitioners "ha[d] failed to meet their burden of proof by clear and convincing evidence" that the deed does not express the true agreement of the parties.

■ As the appealing parties, the petitioners have the burden of demonstrating reversible error. *Gallo v. Traina*, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's order, the petitioners' challenges to it, the record submitted on appeal, and the relevant law, we conclude that they have not demonstrated reversible error. *See id.*

*V. Trial Court's Denial of Fee Request Based upon Claimed Breach of Warranty Deed*

On cross-appeal, the respondents argue that the trial court erred by denying their request for attorney's fees and costs incurred in defending

their warranty deeds against the petitioners' claims. The respondents assert that, in accordance with the statutory requirements relating to warranty deeds, the petitioners were required to defend the respondents' deeds from challenges by "all persons," even from challenges brought by the petitioners themselves. *See* RSA 477:27 (2013). The trial court concluded that the respondents "misinterpret[ ] RSA 477:27, particularly in context of the claim by the [petitioners] . . . to reform [the] deed[s]," and denied their requested recovery.

This issue presents a question of statutory interpretation. "We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." *Wells Fargo Bank v. Schultz*, 164 N.H. 608, 610 (2013) (quotation omitted). We review the trial court's interpretation of a statute *de novo. Id.* "We are guided·by a number of well-settled principles of statutory construction. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." *Coco v. Jaskunas*, 159 N.H. 515, 518 (2009) (quotation omitted). "When construing the meaning of a statute, we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used." *Id.* at 518-19 (quotation omitted). "We interpret statutes not in isolation, but in the context of the overall statutory scheme." *Id.* at 519 (quotation omitted).

"New Hampshire generally follows the American Rule; that is, absent statutorily or judicially created exceptions, parties pay their own attorney's fees." *Appeal of Local Gov't Ctr.*, 165 N.H. 790, 813 (2014) (quotation omitted). The respondents contend that they are entitled to attorney's fees and costs based upon RSA 477:27 and, thus, invoke the statutory exception to the rule.

RSA 477:27 states, in relevant part:

> A deed in substance following the form appended to this section shall, when duly executed and delivered, have the force and effect of a deed in fee simple to the grantee, heirs, successors and assigns, to their own use, with covenant on the part of the grantor, for himself or herself, heirs, executors and administrators, that, at the time of the delivery of such deed, the grantor was lawfully seized in fee simple of the granted premises, that the said premises were free from all incumbrances, except as stated, that the grantor had good right to sell and convey the same to the grantee, heirs, successors and assigns, and that the grantor will, and the heirs, executors, and administrators shall, warrant and defend the same to the grantee and heirs, successors and assigns, against the lawful claims and demands of all persons.

The statute, therefore, mandates four separate covenants on the part of the grantor: (1) "that, at the time of the delivery of such deed, the grantor was lawfully seized in fee simple of the granted premises"; (2) "that the said premises were free from all incumbrances, except as stated"; (3) "that the grantor had good right to sell and convey the same to the grantee, heirs, successors and assigns"; and (4) "that the grantor will . . . warrant and defend the same to the grantee and heirs, successors and assigns, against the lawful claims and demands of all persons." RSA 477:27; *see also Coco*, 159 N.H. at 523. "The fourth covenant requires the grantor to warrant and defend 'the same,' that is, the clear title and right to convey set forth in the first three covenants." *Coco*, 159 N.H. at 523. We have previously interpreted this covenant, referred to as the covenant of warranty or the duty to defend, as requiring a grantor who conveys property by warranty deed to either defend the title to the property or indemnify the grantees for their reasonable expenses in doing so, including attorney's fees. *See id.* at 523-24. Generally, the scope of the covenant of warranty encompasses the duty to warrant and defend against all lawful claims by third persons. *See* 4 H. T. TIFFANY, THE LAW OF REAL PROPERTY § 1010, at 276 (3d ed. 1975 & Supp. 1990); *McCormick v. Crane*, 37 A.3d 295, 298 (Me. 2012).

The respondents contend that they are, "as a matter of law," entitled to their attorney's fees and costs because the petitioners failed to defend their warranty deeds. Because the challenges differ among the respondents, we consider P.E. Roy's claims separately from those of Jason Roy and the Robichauds. With respect to P.E. Roy's claims, we first note that, although he raised the breach of warranty covenants in his answer to the petition, the trial court appears to have directed its ruling on this issue to the counterclaims made by only Jason Roy and the Robichauds. However, because the applicability of RSA 477:27 to P.E. Roy's counterclaim presents a question of law, we need not remand the issue for the trial court's determination in the first instance.

██ ██ The petitioners challenged P.E. Roy's use and maintenance of Sugar Shack R.O.W., a road owned by petitioner Raymond Choquette and not included in the deed to the 103-acre parcel. In order to trigger the fourth covenant in RSA 477:27 — the covenant of warranty or duty to defend — the petitioners' suit must constitute a lawful claim or demand within the meaning of one of the first three covenants. *See Coco*, 159 N.H. at 523. P.E. Roy has not articulated an argument as to which of the covenants are implicated by the petitioners' suit, and we do not interpret the suit as a challenge to "the clear title and right to convey set forth in the first three covenants." *Id.* Furthermore, P.E. Roy's implied easement to traverse *the petitioners' land* using Sugar Shack R.O.W. does not implicate

the petitioners' covenant against encumbrances with respect to *P.E. Roy's land*. Because the petitioners' suit did not involve any of the covenants in RSA 477:27, we hold that P.E. Roy is not entitled to statutory attorney's fees or costs.

We next consider whether the trial court erred in "find[ing] no basis for the counterclaims for breach of title" made by Jason Roy and the Robichauds. Although not expressly stated, we interpret Jason Roy's and the Robichauds' argument to be that the petitioners' actions against them amounted to a challenge under the second covenant in RSA 477:27 — that the properties "were free from all incumbrances, except as stated." RSA 477:27.

■ "The purpose of the [covenant] of freedom from encumbrances is to ensure that the value of the property conveyed is not diminished by any encumbrances that have not been disclosed in the deed." *McCormick*, 37 A.3d at 299. A covenant against encumbrances, however, "is generally regarded as relating to things in existence at the time it was made," and "depends upon the facts as they exist at the time the warranty deed is delivered." 20 AM. JUR. 2D *Covenants, Etc.* § 89, at 628 (2005) (footnotes omitted); *see Gill v. Ferrin*, 71 N.H. 421, 425 (1902) ("[T]he word 'incumbrance' is not ordinarily used in a deed in its broad, generic sense, but is qualified and limited by the apparent purposes of the parties."). "[A] claim for breach of the [covenant] of freedom from encumbrances arises from a complete failure to disclose an encumbrance." *McCormick*, 37 A.3d at 299. Accordingly, "[w]hen an encumbrance has been disclosed in a deed, even if only by strong implication," the covenant has not been breached. *Id.*

■ Reformation, in contrast, "is made to effectuate all the parties' common intentions that were incorrectly reduced to writing and to make an erroneous instrument express the real agreement." 66 AM. JUR. 2D *Reformation of Instruments* § 5, at 253 (2011) (footnotes omitted).

> Equity has jurisdiction to reform written instruments in but two well-defined cases: (1) Where there is a mutual mistake, — that is, when there has been a meeting of minds, an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto; and (2) where there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining parties.

*Mullin v. Eaton*, 19 A. 371, 372 (N.H. 1889) (quotation omitted). "The purpose of an action for reformation is to change a written instrument by inserting some omitted provision or deleting some existing provision so that

the document conforms to the original agreement of the parties." 66 AM. JUR. 2D *Reformation of Instruments* § 5, at 253 (footnote omitted). "In order to support reformation, the evidence must show that the instrument is not the true expression of the agreement." *Gagnon*, 97 N.H. at 64 (quotation omitted). Generally, "to be entitled to the reformation of a deed, one must be a party to the deed or in privity with a party to the deed." 66 AM. JUR. 2D *Reformation of Instruments* § 59, at 304; *see id.* § 60 (entitled "Persons in privity with original parties to instruments"); *Bourne v. Lajoie*, 540 A.2d 359, 361 (Vt. 1987) (recognizing that "the right to seek reformation of a deed is limited to the original parties to the deed and their successors in title").

The nature of an action to reform a deed is, therefore, qualitatively different from an action challenging title. *Compare McCormick*, 37 A.3d at 298 (explaining that covenant of warranty is a promise to defend lawful claims by third persons), *with Bourne*, 540 A.2d at 361 (stating that reformation is limited to the original parties and their successors in title). Consequently, we hold that RSA 477:27 does not authorize attorney's fees for an action seeking reformation of a deed. *See Anderson v. Selby*, 700 N.W.2d 696, 702 (N.D. 2005) (declining to award attorney's fees under warranty deed in reformation action by grantor); *see also Civic Realty, Inc. v. Development, Inc.*, 641 P.2d 1361, 1362-63 (Haw. Ct. App. 1982) (recognizing distinction between attack on title by third party and complaint alleging mutual mistake in deed).

Here, the petitioners asserted that, by mutual mistake, Jason Roy's and the Robichauds' deeds did not include the application covenants, and thus they did not reflect the true intention of the parties. By their suits, the petitioners attempted to modify the deeds to reflect the agreement they alleged existed at the time of conveyance. Consequently, we conclude that the petitioners' suits against Jason Roy and the Robichauds were in the nature of reformation and were not actions under the deed. As such, the petitioners' suits did not implicate RSA 477:27, and the trial court did not err in denying Jason Roy's and the Robichauds' request for recovery on their breach of warranty claims.

The respondents also argue that "[f]urther support for ordering the [petitioners] to pay the [respondents'] costs and legal fees, incurred in defending their Warranty Deeds, is found in RSA 356-A:16, II." *See* RSA 356-A:16 (2009) (providing civil remedies as part of the "Land Sales Full Disclosure Act," including court's discretion to award attorney's fees). However, the record does not reflect, and the respondents have not pointed to, any evidence that they made this argument in the trial court. *See Lakes*

*Region Gaming v. Miller*, 164 N.H. 558, 560 (2013). Consequently, the respondents have failed to satisfy their burden, as the appealing party, to provide this court with a record sufficient to demonstrate that the issue was raised before the trial court and preserved for our review. *See id.* We, therefore, conclude that the trial court did not err in denying the respondents' request for attorney's fees and costs.

*Affirmed in part; reversed in part; and remanded.*

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.