NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Cheshire
No. 2019-0197

EDWARD E. FAVART

v.

STEVEN M. OUELLETTE & a.

Argued: January 14, 2020
Opinion Issued: May 22, 2020

Bradley & Faulkner, P.C., of Keene (Gary J. Kinyon on the brief and orally), for the plaintiff.

Fernald, Taft, Falby & Little, P.A., of Peterborough (Silas Little on the brief and orally), for the defendants.

HANTZ MARCONI, J. The plaintiff, Edward Favart, appeals an order of the Superior Court (Ruoff, J.) ruling that land owned by the defendants, Steven and Kevin Ouellette, benefits from an implied easement over the plaintiff's land along a fifteen-foot wide access road to the "beach area" of Sip Pond depicted on a 1992 subdivision plan. The court further ruled that installation and use of a dock is a reasonable use of the easement. We affirm in part, reverse in part, and remand.

The trial court found, or the record supports, the following facts. The properties relevant to this appeal are located along the shore of Sip Pond in Fitzwilliam, and were once part of a single parcel owned by Susanna and

William Anderson.  In 1947, the entire property was conveyed to the Andersons' four children.  In 1961, the four siblings subdivided the property amongst themselves into four lots: Lot 1, the southernmost lot, contained 5.2 acres; Lot 2, deeded to Lillian Bellis, contained 3.6 acres; Lot 3, deeded to Henry Anderson, contained 3.4 acres; and Lot 4, the northernmost lot, contained 3.3 acres.  All four lots were rectangular in shape and had water frontage along the shore of Sip Pond, but only Lot 3 had a beach area along the shore due to the littoral topography.  When the property was subdivided, there were approximately 10 cottage-like structures scattered among the four lots, all of which were accessed using a private access road that weaved amongst the lots.  None of the deeds to these four lots expressly granted or reserved any rights-of-way.  The private access road is still used today, and the trial court's view of the property revealed plainly visible pathways that run through the parcels and "connect" the various structures.

In the 1960s and 70s, Lillian Bellis, who owned Lot 2, executed a series of conveyances that effectively subdivided Lot 2 and created some parcels without any frontage on Sip Pond, including Lot 7, which is now owned by the defendants.  Some of the deeds to these transactions included language granting or reserving rights-of-way.  In addition, a plan depicting the previously mentioned access road as a right-of-way to Sip Pond was created in 1973.  Finally, the remaining Anderson heirs recorded another survey plan in 1992 (1992 plan), which depicts the lots created as a result of the conveyances made by Lillian Bellis.

Lot 1 on the 1992 plan — a part of what was originally Lot 2 — was conveyed to Henry Anderson and granted a right-of-way "beginning at the old Turnpike Road leading from Fitzwilliam to Winchendon to the shore of Sip Pond."  Lots 2, 4, and 5, as depicted on the 1992 plan, were also conveyed to Henry Anderson, but no rights-of-way were granted or reserved in those conveyances.  Lot 3 on the 1992 plan, conveyed to Robert Anderson, was granted "[a] right of way fifteen feet wide on the land of Lillian Bellis and boarding [sic] the land of Henry Anderson to the shore of Sip Pond," and "[a] right of way on the Westerly side of the old turnpike road leading from Fitzwilliam to Winchendon across the land of Lillian Bellis to [Lot 3]."  Each of these conveyances occurred between August 1964 and April 1965.

In 1975, Lots 6 and 7 as depicted on the 1992 plan were conveyed in a single transaction from Lillian Jean[1] to Frank and Joan Michaelson.  Joan is the mother of the defendants; Frank is their stepfather and also the nephew of Lillian Bellis and Henry Anderson.  The deed to Lot 6 grants "a right of way fifteen (15) feet wide to the grantees . . . along the 'right of way to Sip Pond' from the Old Winchendon Turnpike and across [Lot 7] herein conveyed and

---

[1] Lillian Bellis had married by this time and went by Lillian Jean.

also across land of Henry Anderson[2] and others as presently used by the residents of the area." Lot 7 was conveyed "[s]ubject to a right of way in favor of the grantees and others across part of [Lot 7] from Old Winchendon Turnpike to other lands on Sip Pond as said right of way is presently used."

The Michaelsons conveyed Lot 6 to the plaintiff in 2004, who had acquired Lot 8 (originally Lot 3 in the 1961 subdivision) earlier in the same year. The deed conveying Lot 8 to the plaintiff describes the fee conveyed by reference to "8" on the 1992 plan, and states that "[t]he premises are subject to all conditions, easements, matters and state of facts" shown on the 1992 plan and a plan recorded in April 1961. In the deed conveying Lot 6 to the plaintiff, the Michaelsons reserved a fifteen-foot wide right-of-way "along the 'right of way to Sip Pond' from the Old Winchendon Turnpike and across other land of grantors, across the within granted premises, and also across land of Henry Anderson and others as presently used by residents of the area." The plaintiff subsequently acquired Lots 1-5 as depicted on the 1992 plan. Thus, the plaintiff had acquired Lot 8 and all of the subdivided parcels comprising what was originally Lot 2, except for Lot 7.

In 2007, the Michaelsons conveyed Lot 7 to Steven Ouellette, one of the defendants. The deed to that conveyance states that it is "[s]ubject to a right of way in favor of the Grantors (Michaelson) and others across part of the [conveyed] premises . . . from Old Winchendon Turnpike to other lands on Sip Pond as said right of way is presently used." Steven subsequently conveyed Lot 7 to himself and his brother Kevin, the other defendant, and the deed to that conveyance described the same right-of-way using the same language as the deed transferring the property from the Michaelsons to Steven.

In February 2017, the plaintiff filed this lawsuit requesting the court to order the removal of a dock that the defendants had installed on the plaintiff's property, and enjoin the defendants from interfering in any manner with the plaintiff's use of his property. In response, the defendants argued that their right of easement over the plaintiff's land gives them the right to access the water of Sip Pond at the beach area and lay a dock there. Based upon evidence presented at trial regarding, among other things, the historical use of the properties, as well as a view of the properties, the trial court found that the parties to the 1961 subdivision intended to create an easement to access the beach area. The court also found that, given the rural location of the lots, the easement was reasonably necessary for the defendants' enjoyment of their lot. Thus, the trial court concluded that the defendants' land benefits from, and the plaintiff's land is burdened by, an easement by implication. The trial court further concluded that installation and use of a dock is a reasonable use of the easement, and because there was no evidence that the easement had been

---

[2] At the time of this transaction, Henry Anderson owned what was originally Lot 3 in the 1961 subdivision (Lot 8 on the 1992 plan), and also Lots 1, 2, 4, and 5 as depicted on the 1992 plan.

expressly rescinded, it endured as a vested right of the current owners under RSA 477:26 (2013).  This appeal followed.

An easement is a nonpossessory interest in real property that can be created by written conveyance, prescription, or implication.  Soukup v. Brooks, 159 N.H. 9, 13 (2009).  An easement by implication is presumed to exist if, during unity of title, the owner imposes an apparently permanent and obvious servitude on one tenement in favor of another, which at the time of severance of title is in use and is reasonably necessary for the fair enjoyment of the tenement to which such use is beneficial.  Choquette v. Roy, 167 N.H. 507, 513 (2015).  However, because this doctrine is based on the theory of an implied grant, the circumstances surrounding the conveyance control.  Id.  The question is whether the parties could reasonably have thought that the right was not granted.  Id. at 513-14.  The law is well settled that an easement by implication will not be found merely because it would be convenient to have the grant.  Id. at 514.  An easement by implication arises only because the parties so agreed.  Id.  The issue of whether there was an implied easement is a question of fact for the trial court, and we will not disturb its finding if a reasonable person could have reached the same conclusion based on the evidence presented.  Id.  Thus, we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence.  Jesurum v. WBTSCC Ltd. P'ship, 169 N.H. 469, 476 (2016).  We review the trial court's application of law to the facts de novo.  Id.

For an implied easement burdening Lot 8 in favor of Lot 7 to exist, it must have been created when the lots were first subdivided in 1961, because that is when unity of title existed between the parcels that ultimately became Lots 7 and 8.  See Choquette, 167 N.H. at 513.  At trial, the court heard testimony from the defendants and their mother concerning the historical use of the properties, which it credited.  Each of them testified to going to Sip Pond beginning in the early 1960s, using the beach area with their family, and engaging in activities at the beach area such as swimming, boating, fishing, snowmobiling, and star gazing.  Some of those memories dated back to 1961, and there was also testimony that the sibling-parties to the 1961 subdivision got along well and all used the beach area.  In addition, the court received photographic evidence supporting the use of the beach area as testified to by the defendants and their mother.

The plaintiff argues that at least some testimony of the defendants and their mother relates to activity that took place after the 1961 severance, and therefore should not be considered in our analysis. We disagree.  The severing parties' reasonable expectation to continue such acquired uses of land is a consideration protected by the doctrine of implied easements.  See Restatement (Third) of Property: Servitudes § 2.12, cmt. a, at 160 (2000) (noting that implied easements are "not based solely on the presumed actual intent of the parties,"

and that the doctrine "furthers the policy of protecting reasonable expectations, as well as actual intent, of parties to land transactions"); Choquette, 167 N.H. at 513-14 ("The question is whether the parties could reasonably have thought that the [easement] was not granted." (quotation omitted)).  Subsequent use of the land by the severing parties may reflect the reasonable expectations as to how the land would be used following severance.  Thus, it does not follow that such evidence is irrelevant to the analysis of an implied easement in all cases.

The court's finding of an implied easement was further supported by the fact that several camps, all of which were used by family members, were scattered throughout the lots and connected by foot or small vehicle paths when the property was first subdivided in 1961.[3]  Those connecting pathways are still plainly visible, and, based upon a view of the property, the court stated that "[c]learly, this is a case in which a family lakefront camp was passed down from parents to siblings with the intent of continued common usage of the property."  Therefore, the court found that "the language [in the deeds] referring to 'roads' as 'presently used' must refer to the pre-existing practice of the family using the pathways to access the cabins and the waterfront on lot [8]."  See generally Arcidi v. Town of Rye, 150 N.H. 694, 702 (2004) ("We will not overturn the factual findings of the trial court, particularly when aided by a view of the property in question, when they are supported by the evidence."); Spaulding v. Clark, 104 N.H. 30, 32 (1962) (interpreting deed language granting a right of way "when needful" as granting an easement to reach the shore of Sand Pond where there was evidence that it was the defendants' only means of reaching the pond).

Additionally, the trial court found that the location of the initial lots along Sip Pond makes the easement reasonably necessary to the enjoyment of Lot 7.  We agree.  The trial court acknowledged that the lots were in a rural, undeveloped area, and that engaging in recreational activities on Sip Pond was the "reason[ ] these lots were created and used."  Moreover, Lot 8 on the 1992 plan is the only lot that has easy access to Sip Pond for the recreational activities described at trial, which was readily apparent to the trial court based upon the topography of the land.[4]  Thus, an easement to access the beach was reasonably necessary for the enjoyment of the original Lot 2.  Accordingly, the severing parties had reasonable grounds to expect that the right to continue such use to access the beach area was included in the conveyance.  See Restatement (Third) of Property: Servitudes § 2.12, at 159-60.

---

[3] The trial court found that such a "path" was the only means of accessing the cottage-like structures on Lot 4 when the property was originally subdivided in 1961.

[4] Given this fact, the plaintiff's argument that the lots created in 1961 were of similar size and all contained water frontage, or that other lots without a beach area maintained a dock, do not detract from the evidence supporting a finding of reasonable necessity.

The heart of the plaintiff's argument is that there is no evidence establishing the intent of the parties to the 1961 subdivision to create an easement during unity of title. Relying chiefly upon Burke v. Pierro, 159 N.H. 504 (2009), the plaintiff argues that "the record is devoid of evidence showing" prior use of the beach area or an intent of the severing parties to create an easement in 1961. In Pierro, we observed that the trial court necessarily rejected the existence of an implied easement based upon prior use by making no specific findings on the issue. Pierro, 159 N.H. at 510. We upheld the trial court's implicit ruling as reasonable because "the record [was] devoid of any evidence demonstrating that the property . . . included [the easement] prior to severance . . . ." Id. Here, by contrast, the trial court made specific findings after it heard testimony relating to the historic use of the properties, received photographic evidence in support of that testimony, heard evidence of interconnected cottages scattered throughout the lots, and took a view of the property. Thus, we cannot agree with the plaintiff that the record is devoid of evidence to support the trial court's finding.

We are equally unpersuaded by the plaintiff's comparison of this case to Blaisdell v Raab, 132 N.H. 711 (1990). Unlike the case now before us, Blaisdell included a record that made it manifestly obvious that a revocable license was granted to the plaintiffs, which, in turn, made reasonable the trial court's ruling that no implied easement existed. See Blaisdell, 132 N.H. at 717 (concluding that the plaintiffs had nothing more than a revocable license to use the defendants' driveway in light of evidence introduced at trial including agreements titled "License to Use Driveway" and "License to Use Driveway Revoked," and testimony that the license agreement was presented to the plaintiff at time of severance). In short, none of the cases relied upon by the plaintiff demonstrates that the trial court committed legal error.

Next, the plaintiff argues that it is "of great significance" that none of the deeds conveying property that was originally part of Lot 2 after the 1961 subdivision makes any reference to an easement over the beach area. Presumably, the plaintiff contends, if Lillian Bellis believed she had rights to an implied easement, she would have made reference to them in a subsequent conveyance. Arguably, she did. The deeds to conveyances subsequent to the 1961 severance do not unambiguously identify an easement permitting access to the beach area; however, the deeds to Lots 1, 6, and 7 do grant rights that can support the assertion that Lillian Bellis believed she had a right-of-way to the shore of the Pond in addition to the access provided to the lots. For example, the deed to Lot 1 includes language granting "a right of way beginning at the old Turnpike Road . . . to the shore of Sip Pond"; the deed to Lot 6 includes "a right of way fifteen (15) feet wide . . . along the 'right of way to Sip Pond' . . . across the land of Henry Anderson and others as presently used by the residents of the area"; and the deed to Lot 7 includes a "right of way . . . to other lands on Sip Pond as said right of way is presently used." Ultimately, the

extent to which these deeds provide evidence of the parties' intent at severance was a determination for the trial court.  See Jesurum, 169 N.H. at 476.

The plaintiff also argues that, even if there is evidence to establish prior use of the beach area, it does not support finding an implied easement because any such use was permissive.  This argument is misplaced, however, because adversity is not a requirement for finding an easement by implication.  Choquette, 167 N.H. at 514.  Lastly, the plaintiff argues that an easement by implication did not arise because "there was no agreement by the siblings" to create such an easement.  However, this argument assumes the truth of its conclusion, as "[a]n easement by implication arises [from evidence that] the parties so agreed."  Blaisdell, 132 N.H. at 717.

Since the doctrine of implied easements rests upon the theory of an implied grant, the circumstances surrounding the transaction are controlling and must be such as to raise a reasonable implication that the right was granted.  Elliot v. Ferguson, 104 N.H. 25, 28 (1962).  In this case, we conclude that the trial court's findings are supported by the record, and that those findings are sufficient to establish that a reasonable person could have concluded that, at the time of the 1961 subdivision, the easement over the beach area was "permanent and obvious" and "reasonably necessary for the fair enjoyment of the" lots.  Choquette, 167 N.H. at 514 (quotation omitted).  Accordingly, we affirm the trial court's finding of an easement by implication over the plaintiff's land along the fifteen-foot access road on that land, depicted in the 1992 plan, which terminates at, and also includes, the beach area depicted on that plan.

We now turn to the plaintiff's argument that the trial court erred by ruling that the easement is a vested right of the defendants as owners of Lot 7 pursuant to RSA 477:26.  Under RSA 477:26, easements automatically pass with the transfer of property to which they are appurtenant, even when absent from the face of the deed.  See RSA 477:26; Mansur v. Muskopf, 159 N.H. 216, 222 (2009).  The plaintiff contends that the trial court erred in ruling that the easement is a vested right of the defendants under RSA 477:26 because "nothing in the recorded documents in the Cheshire County Registry of Deeds establishes the easement by implication."  The plaintiff appears to argue that, for RSA 477:26 to apply, there must be a "document evidencing the easement."  In so arguing, the plaintiff misconstrues RSA 477:26, which plainly states that "all . . . easements . . . belonging to the granted estate or interest shall be deemed to be included in the conveyance," unless the deed specifically states otherwise.  RSA 477:26 (emphasis added).  Thus, implied easements are subject to RSA 477:26.  Therefore, having affirmed the trial court's finding of an implied easement, we also affirm the trial court's ruling that the easement, once established, transferred with the land.

Finally, we address whether the trial court erred by ruling that the installation and use of a dock is a reasonable use of the implied easement over the beach area on Lot 8. The trial court's ruling relied upon "the evidence of the existence and use of prior docks in the area." The plaintiff argues that the trial court erred in its ruling because there is no evidence that a dock had ever been installed on the beach area of Lot 8. We agree with the plaintiff.

The scope of an easement is dependent upon the nature of the easement's creation. See Sandford v. Town of Wolfeboro, 152 N.H. 1, 4 (2005) ("The scope of a prescriptive easement is defined by the character and nature of the use that created it."). Traditionally, the scope of easements implied from prior use has been limited to the circumstances of the use giving rise to the easement. See Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land § 8:8, at 539 (2019); Connolly v. Maine Cent. R. Co., 30 A.3d 830, 833-34 (Me. 2011) (upholding trial court's ruling that implied easement was limited to historic use as farm crossing); Read v. Webster, 113 A. 814, 817-18 (Vt. 1921) (holding that implied easement to maintain a dam was limited to the height of the dam at time of severance). The modern trend tends to permit any further usage of the easement that the parties might have reasonably contemplated. See Bruce & Ely, supra § 8:8, at 539-40; Capstar Radio Operating Co. v. Lawrence, 375 P.3d 282, 294 (Idaho 2016) (stating that "the scope of the implied easement by prior use is for unlimited reasonable use").

We need not decide which approach to adopt, however, because under either approach the evidence does not support the trial court's finding. At trial, there was testimony that there were two docks in the water on Lot 11 on the 1992 plan (Lot 4 in the 1961 subdivision). The plaintiff also testified that there was a dock on Lot 6 (part of Lot 2 in the 1961 subdivision) when he purchased it from the Michaelsons. However, both defendants, and their mother, testified that there was never a dock on the beach area of Lot 8 until one of the defendants installed one in 2016. Therefore, installation and use of a dock is not within the scope of the easement under the traditional approach because there is no history of prior use of a dock on the beach area of Lot 8.

Similarly, under the modern approach, the evidence of docks being used on lots other than Lot 8, without more, is not sufficient to establish that the severing parties reasonably expected that each lot that had been granted the right to use the beach area on Lot 8 was also granted the right to install and use a dock there. Indeed, the fact that the owners of original Lot 2 and Lot 4 historically maintained their own docks, coupled with the fact that no dock had ever existed on Lot 8 prior to this dispute, would be reasonably understood to indicate that the severing parties did not contemplate installation and use of a dock as a permissible use of the beach area easement. In sum, although the existence and prior use of other docks in the area may be a relevant consideration in determining the scope of the easement under the modern approach, it is insufficient by itself to support the trial court's finding. The

defendants point to no additional evidence to support the trial court's finding on this issue.  Therefore, we conclude that, on this record, the defendants' installation and use of a dock on the beach area was not within the scope of the implied easement.

For the reasons expressed, we affirm the trial court's finding of an easement by implication over the access way and the beach area on the plaintiff's land; we affirm the trial court's ruling that the easement passed with the property under RSA 477:26; and we reverse the trial court's ruling that installation and use of a dock was within the scope of the implied easement and remand.

<u>Affirmed in part; reversed in part; and remanded</u>.

HICKS, BASSETT, and DONOVAN, JJ., concurred.