Vermont Superior Court
Filed 04/02/25
Orange Unit

VERMONT SUPERIOR COURT
Orange Unit
5 Court Street
Chelsea VT  05038
802-685-4610
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-02231

| Heather Drinan v. Green Mountain Stock Farm, Inc. |
|---|

## ENTRY REGARDING MOTION

Title:      Motion to Dismiss per VRCP 12(b)(6), 12(b)(7), 19 (Motion: 4)
Filer:      Cabot Teachout; Green Mountain Stock Farm, Inc.
Filed Date: November 19, 2024

The motion is DENIED.

This is a dispute about competing responsibilities between a buyer and seller to know what encumbrances burden a property.

Defendant Green Mountain Stock Farm, Inc. (GMSF) has been the developer of a 1300-acre farm known as the Green Mountain Stock Farm, in Randolph, Vermont since the early1980s when it began subdividing and selling lots.  In 2023, it was still advertising "building" lots for sale.  These lots included Lots #15–16 and #27, which are at the heart of this case.

Plaintiff Heather Drinan purchased the three lots with the intent to develop them.  She signed a purchase and sale agreement with GMSF, and it conveyed the property to her through two warranty deeds.  Neither deed made mention of the view easements that burdened the three properties.  When Drinan took the first steps to develop the lots, a neighbor advised her of the view easements, which rendered two of the lots entirely undevelopable and isolated development on the third to narrow building envelop.  Drinan filed the present case claiming breach of warranty (the covenant against encumbrances), negligent or intentional misrepresentation, and a violation of Vermont's Consumer Protection Act.

GMSF has filed a motion to dismiss arguing that all three claims fail as a matter of law because Drinan had constructive notice of the encumbrances as they could be found in the land records.  GMSF also contends that the complaint should be dismissed because Ms. Drinan's real

estate lawyer and insurance company are necessary parties for the just adjudication of this case under Rule 19 but have not been joined as parties.

*Rule 12(b)(6) Standard*

Courts rarely grant motions to dismiss for failure to state a claim and generally disfavor them. *Colby v. Umbrella Inc.*, 2008 VT 20, at ¶ 5; see also *Bock v. Gold*, 2008 VT 81, ¶ 4 (citation omitted). To determine whether a complaint survives a motion to dismiss, the court assumes the factual allegations in the complaint are true. *Colby*, 2008 VT 20, at ¶ 5. The court will only grant the motion if there are no facts or circumstances that would grant plaintiff relief. *Id.* This is because the purpose of a motion to dismiss for failure to state a claim is "to test the law of the claim, not the facts which support it." *Brigham v. State of Vermont*, 2005 VT 105, ¶ 11 (quoting *Powers v. Office of Child Support*, 173 Vt. 390, 395 (2002)); see also *Levinsky v. Diamond*, 140 Vt. 595, 600 (1982), overruled on other grounds in *Muzzy v. State*, 155 Vt. 279, (1990).

Factual Background

The allegations of the complaint are as follows. GMSF is the developer of a 1300-acre parcel known as the Green Mountain Stock Farm, in Randolph, Vermont. In 1982, GMSF sold Lot #17 to the Raffels. The Raffel Deed included covenants that burden the adjacent Lots #15–16 by prohibiting structures of any kind to be erected thereon and Lot #27 by limiting any erected structures to a 200x100 ft area in the southwestern part of the Lot. The expressed intent of these covenants was to provide Lot #17 a view "unobstructed by man-made structures and/or buildings." Lot #17 has since changed hands twice and is currently owned by Forman and Blumenthal. The Forman–Blumenthal Deed repeats the language regarding the restrictive covenants benefitting the Lot in the Raffel Deed. Apart from the GMSF-to-Raffel chain of deeds, the restrictions are not otherwise memorialized.

In 2023, GMSF was still selling Lots from the Green Mountain Stock Farm and advertising "10-plus acre building sites." The offerings included Lots# 15, 16, and 27, but GMSF did not disclose the encumbrances or provide an exclusion or disclaimer for the lots that would distinguish them from the other unencumbered lots being sold.

In June 2023, Drinan entered into a contract with GMSF to purchase Lots #15, 16, and 27. GMSF was aware that Drinan was purchasing the lots with the intent to develop them. Under the

parties' purchase and sale agreement, GMSF promised to deliver a warranty deed for these lots at closing. Drinan also had the right to conduct a title examination. If the review found any encumbrances or defects, Drinan had the obligation to notify GMSF and give it the opportunity to cure. If no cure followed, then Drinan could either go forward or cancel the agreement. Drinan did not notify GMSF of any such encumbrance or defect, and GMSF conveyed the Lots to Drinan by warranty deed. As part of their warranty, the deeds include a covenant stating that the Lots were conveyed "free from every encumbrance." There were no express exception to this covenant cited in the deeds, and they are silent about any restrictive covenants protecting the view secured to Lot #17.

Following the closing in July 2023, Drinan began developing the Lots and hired an engineering company to build single family residences on each of the Lots. After learning about Drinan's plans, Forman and Blumenthal notified Drinan in December 2023 of the view easements. Drinan states that this was the first time she was told or informed that her Lots had any encumbrance that would affect how she could develop or use them. Drinan halted development plans and initiated this case.

Legal Analysis

*Count I: Breach of Warranty/Covenant Against Encumbrances*

A warranty deed includes, among others, a covenant against encumbrances. The covenant is an agreement whereby the grantor promises that the title conveyed is free from encumbrances. See *Olcott v. Southworth*, 115 Vt. 421, 424 (1949) (citation omitted). An encumbrance "is a right to or interest in land that may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee." *Hunter Broad., Inc. v. City of Burlington*, 164 Vt. 391, 393 (1995) (citing *Olcott*, 115 Vt. at 424). Contrary to defects which adversely affect a clear title, an encumbrance merely diminishes the value of a property. See *Trinder v. Connecticut Att'ys Title Ins. Co.*, 2011 VT 46, ¶ 17 (citation omitted). Thus, as other New England Supreme Courts have noted, the covenant against encumbrances serves "to protect a grantee from the reduction in value that results from an encumbrance that was not disclosed in the deed." *McCormick v. Crane*, 37 A.3d 295, 298–99 (Me. 2012) (citation omitted); *Choquette v. Roy*, 114 A.3d 713, 723 (N.H. 2015) (citation omitted). The view easements at issue in this case are such an encumbrance.

The Vermont Supreme Court has held that the covenant in a warranty deed may be breached even if the buyer has constructive notice of the encumbrance. In *Olcott*, the seller knew about a water right encumbering a property but failed to inform the buyer or the attorney who prepared the deed. 115 Vt. at 423. Refusing to apply the theory of mutual mistake in such circumstances, the Supreme Court held that the buyer's constructive notice of an easement by reason of the references to previous deeds in his chain of title did not frustrate buyer's right to a claim of breach of covenant. *Id.* at 425. Further, "[a]ctual notice on the plaintiff's part would not relieve the defendants from the obligation of the covenant." *Id.* (citing *Butler v. Gale*, 27 Vt. 739 (1855)).

Several other states' courts have expressed similar views. See, e.g., *Blissett v. Riley*, 667 So. 2d 1335, 1338–39 (Ala. 1995) (citations omitted) (holding that "[k]nowledge, or notice of an encumbrance, however full, does not impair the covenantee's right of recovery upon covenants against encumbrances, for the covenants are executed for the protection and indemnity against known and unknown encumbrances."); *Loveland Essential Grp., LLC v. Grommon Farms, Inc.*, 251 P.3d 1109, 1118 (Colo. App. 2010) (citations omitted) ("a buyer's mere prior knowledge of an encumbrance does not preclude an action for breach of a covenant against encumbrances. . . . It is only where the buyer demonstrates an intent to accept the encumbrance that it waives the right to claim a breach."); cf. *Choquette*, 114 A.3d at 723 (citing *McCormick,* 37 A.3d at 299) ("Accordingly, '[w]hen an encumbrance has been disclosed in a deed, even if only by strong implication,' the covenant has not been breached.").

Based on Plaintiff's complaint, the deeds in this case do not disclose the easements, which substantially affect and impact the Lots at issue. Given the warranty covenants, Drinan's breach of warranty claim survives as a matter of law because it arises from precisely the type of encumbrance that the covenant is intended to address. Therefore, Defendant's motion is **Denied** in regard to Plaintiff's breach of warranty claim.

*Count II: Misrepresentation*

GMSF argues that both misrepresentation claims fail as a matter of law because, again, Drinan herself is at fault for not discovering the encumbrances in the land records.

Intentional misrepresentation occurs when (1) there is an intentional misrepresentation of existing fact; (2) that fact affected the essence of the transaction; (3) the maker of the

misrepresentation knew the statement to be false when it was made; (4) it was not open to the defrauded party's knowledge; and (5) it was relied on by the defrauded party to their damage. *Pettersen v. Monaghan Safar Ducham PLLC*, 2021 VT 16, ¶ 20 (2021) (citation omitted). Negligence on the part of the Plaintiff "is not an absolute defense to fraudulent misrepresentation." *Silva v. Stevens*, 156 Vt. 94, 105 (1991). Whether the fourth element is met, depends on the circumstances, such as the full text of a representation or the relationship of the parties. *Id.* (citation omitted); see also *White v. Pepin*, 151 Vt. 413, 420 (1989) (holding that due diligence is case-specific).

As to negligent misrepresentation, Vermont courts apply Restatement (Second) of Torts § 552(1) (1977). *Burgess v. Lamoille Hous. P'ship*, 2016 VT 31, ¶ 21. It provides, in relevant parts, that when a person with a pecuniary interest in a transaction supplies false information for the guidance of others in their business transactions, that person is subject to liability for pecuniary loss caused to the others, when the others justifiably relied upon the information and the person failed to exercise reasonable care or competence in obtaining or communicating the information. *Id.* Whether the person providing the false information exercised "reasonable care or competence" depends on the facts and the circumstances of the case. *Howard v. Usiak*, 172 Vt. 227, 230–31 (2001) (citation omitted).

Defendant argues that the contract put the burden on Ms. Drinan to "cause the title to the Property to be examined," and whatever title search was conducted was the problem. This is ultimately a question of fact, and it is insufficient for Rule 12(b)(6) purposes. Therefore, Defendant's motion is **Denied** in regard to Plaintiff's second set of claims arising from misrepresentation.

*Count III: Violation of Consumer Protection Act*

The Vermont Consumer Protection Act (VCPA) prohibits "unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453. The elements of a VCPA violation are that (1) there was a representation or omission by Defendant that was likely to mislead consumers; (2) Plaintiff interpreted the message reasonably under the circumstances; and (3) the misleading effects were material, meaning that the conduct influenced Plaintiff's conduct regarding the transaction. See, e.g., *Ianelli v. U.S. Bank*, 2010 VT 34, ¶ 10 (mem.) (citation omitted).

> Deception is measured by an objective standard, looking to whether the
> representation or omission had the "capacity or tendency to deceive" a reasonable

consumer; actual injury need not be shown. To be reasonable, moreover, the consumer's understanding need not be the *only* one possible; "if an ad conveys more than one meaning to reasonable consumers and one of those meanings is false, that ad may be condemned." Furthermore, the Act "does not require a showing of intent to mislead, but only an intent to publish the statement challenged."

*Carter v. Gugliuzzi*, 168 Vt. 48, 56 (1998) (internal citations omitted and cleaned up) (emphasis in original).

GMSF cites no authority to the effect that a "constructive notice" available to the consumer vitiates the seller's misrepresentation for VCPA purposes. This is because consumer fraud cases look to the actions of the seller and whether seller's affirmative actions were deceptive or an unfair business practice. 9 V.S.A. § 2453(a); *Jordan v. Nissan North America, Inc.*, 2004 VT 27, ¶ 5. At best, GMSF's arguments might constitute an affirmative defense, but this is an issue of fact and not law. To succeed, GMSF would have to show that the title search that Drinan undertook factually overtook any liability GMSF may have for its misleading statements and omission. See *Jordan*, 2004 VT 27, at ¶ 10 (discussing an affirmative defense of statutory compliance to a consumer fraud claim). As Judge Pearson noted in a similar case:

> Circumstances tending to show Buyers' constructive, or "inquiry" notice of the [real estate issue] may reflect on the justifiability of Buyers' reliance on the alleged misrepresentations, the materiality of the misrepresentations, and even the basic nature of the alleged misrepresentations—issues that usually should be decided by the finder of fact—but they do not, as a matter of tort law, simply make the alleged misrepresentations go away. See W. Keeton, et al., Prosser and Keeton, Law of Torts, § 108, at 752 (5th ed. 1984) ("The plaintiff is not required, for example, to examine public records to ascertain the true state of the title claimed by the defendant."); Restatement (Second) of Torts, § 540 (describing the general rule that one does not have a duty to determine the falsity of a representation through investigation). Taking the record evidence in the light most favorable to the Buyers, the jury could find that the incomplete information packet provided by [Seller] was inaccurate, and misleading.

*Anderson v. Johnson*, Dckt. No. 199-4-06 Wncv, 2008 WL 8496067 (Feb. 3, 2008) (Pearson, J.).[1]

---

[1] Embedded in this analysis is the additional question not briefed by the parties of whether the title search provision of the purchase and sale agreement was intended to create a benefit for buyer or to create an obligation on which seller may also rely.

GMSF's position is also distinguishable from the argument that the seller did not know about encumbrance, which the Vermont Supreme Court has indicated in the context of landlord/tenant habitability issues may limit liability if such knowledge was unknown to the defendant, and defendant did not have a duty to know. *Terry v. O'Brien*, 2015 VT 132, ¶¶ 36–38. In either case, the issue is ultimately fact-driven as to what each party knew or should have known at the time of the transaction and whether such statements constituted misrepresentations or omissions likely to deceive the buyer. *Moffitt v. Icynene, Inc.*, 407 F.Supp.2d 591, 603–04 (D.Vt. 2005).

The fact that Drinan could have discovered the encumbrances through a title search does not necessarily relieve GMSF from liability for false, misleading, or deceptive statements. The Vermont Consumer Fraud Act is a remedial act and to be construed liberally. *Ianelli*, 2010 VT 34, at ¶ 9. As such, the Court's analysis must begin with the seller's statements and representations, and it would, at most, be a question of fact, to evaluate if such constructive knowledge constituted such a duty that the law would impute such knowledge onto a buyer. Therefore, Defendant's motion is **Denied** to Plaintiff's third set of claims arising from the Vermont Consumer Fraud Act.

*Parties Needed for the Just Adjudication of the Case*

In the alternative, GMSF argues that Plaintiff's complaint must be dismissed, because she has failed to join her real estate lawyer and title insurance company. GMSF alleges that Drinan's title attorney, Attorney Tallman, and her title insurance company, CATIC, should be considered as joint tortfeasors. GMSF's argument does not suggest any specific facts, but it outlines a general legal position that Tallman and CATIC are necessary parties because their actions contributed to the ultimate injury. Based on the present facts, there is no compelling basis to require the joinder of either Tallman or CATIC as necessary parties under V.R.C.P. 19. While they may be witnesses and provide necessary testimony, they are not necessary parties under Rule 19. Vermont recognizes no right of contribution among joint tortfeasors. *Murray v. J & B Int'l Trucks, Inc.*, 146 Vt. 458, 468 (1986) (citation omitted). Therefore, Drinan can choose which tortfeasor(s) to pursue or not pursue for recovery. See *State v. Therrien*, 2003 VT 44, ¶ 24, 175 Vt. 342. For this reason, the Court finds no basis to dismiss the present action under V.R.C.P. 19 or for a failure to join Tallman and CATIC, and Defendant's motion on this count is **Denied.**

# ORDER

Defendant's Motion to dismiss Plaintiff's complaint pursuant to V.R.C.P. 12(b)(7) is **DENIED**. The Court will schedule this matter for a preliminary discovery conference.

Electronically signed on 4/2/2025 2:44 AM pursuant to V.R.E.F. 9(d)

Daniel Richardson
Superior Court Judge